Hilmar C. STEELE, Plaintiff-Appellant,

v.

HELMERICH & PAYNE INTERNA-
TIONAL DRILLING CO.,
Defendant-Appellee.

No. 83–3466.

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1984.

Craven, Scott & Weeks, B. Gerald Weeks, Alexandria, La., for plaintiff-appellant.

**704**

Hebert & Abbott, Lawrence E. Abbott, Jeanmarie LoCoco, Daniel A. Webb, New Orleans, La., for defendant-appellee.

Before CLARK, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff filed this Louisiana diversity action to recover damages for personal injuries he received when he fell from the derrick of a drilling rig owned by defendant, Helmerich & Payne International Drilling Company (Helmerich & Payne). Following a detailed stipulation of the pertinent facts, the district court, 565 F.Supp. 993, granted defendant's motion for summary judgment and dismissed plaintiff's suit. We affirm.

### I.

Steele was injured on November 5, 1979, when he fell from a derrick some 45 to 50 feet to the floor of a drilling rig. Plaintiff was employed by a contractor, Weatherford-Lamb, which specialized in running casing into partially drilled wells. Helmerich & Payne was drilling the well with their Rig 37. Shell Oil Company was the lease operator and had contracted with both Helmerich & Payne and Weatherford-Lamb to perform their respective services.

The accident occurred while Steele and his fellow Weatherford-Lamb employees were in the preliminary stages of rigging up their equipment to run casing into the hole. Plaintiff and two fellow employees were installing a "stabbing board" on the derrick where a member of the casing crew is required to stand and guide the casing or pipe as it is run into the well. The stabbing board was first raised up in the derrick and initially secured with cables to girts in the derrick. The plaintiff and his fellow crewmembers then proceeded to the next installation step which was to attach the stabbing board rigidly to the derrick with four aluminum braces or "legs". These braces were furnished by Weather-

ford-Lamb specifically for use with its stabbing board. To position the board for installation of the braces, plaintiff stepped onto the stabbing board with one foot and reached down to pick up one of the aluminum braces. As he placed part of his weight on the stabbing board, the cable which loosely secured the board to the derrick slipped, the stabbing board fell several feet, plaintiff lost his balance and fell to the rig floor. The parties stipulated that: Weatherford-Lamb owned the stabbing board and the related equipment; Weatherford-Lamb controlled and supervised the installation of the stabbing board.

Based on the uncontested facts, the district court granted defendant's motion for summary judgment and held: 1) the stabbing board was not an appurtenance of the rig, which, if found defective, would expose defendant to strict liability under Louisiana Civil Code Article 2322; 2) the stabbing board was not in the custody and control of Helmerich & Payne and therefore Louisiana Civil Code Article 2317, which imposes strict liability on the custodian of defective things was inapplicable.

### II.

#### A.

Plaintiff contends that the stabbing board was an appurtenance of Rig 37 and that Article 2322, Louisiana Civil Code, imposes strict liability on the defendant as owner of the drilling rig.

Article 2322 provides: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

In order to establish liability under Article 2322, the plaintiff must establish the following elements: 1) There must be a building; 2) the defendant must be its owner; and 3) there must be a ruin caused by vice in construction or a neglect to repair the building. *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1289 (La.1979).

In *Olsen,* a hotwater heater exploded in the living quarters module adjacent to a drilling rig, both of which were located on a stationary platform in the Gulf of Mexico off the coast of Louisiana. In analyzing the claims of the survivors and injured parties brought under Article 2322, the Louisiana Supreme Court held that: the stationary platform was a "building"; the hotwater heater in the living quarters module was an appurtenance to the building and there was a "ruin" of the appurtenance caused by a failure to repair the hotwater heater.

Under the teaching of *Olsen* and cases relied on by *Olsen, Mott v. ODECO,* 577 F.2d 273 (5th Cir.1978) and *Vinton Petroleum Co. v. L. Seiss Oil Syndicate,* 19 La. App. 179, 139 So. 543 (1932), we conclude that Drilling Rig 37 is a "building" under Article 2322. Defendant's liability under Article 2322 therefore depends upon whether the stabbing board is considered an "appurtenance" of the rig and whether the stabbing board fell as a result of the "ruin" of the board.

In determining whether an attachment is an appurtenance of a building the two general considerations are: how securely the addition is attached to the building and the degree of permanence the parties intend for the addition.

Under the stipulated facts, the stabbing board was a part of the specialized equipment brought aboard defendant's rig by plaintiff's employer, Weatherford-Lamb. The stabbing board was to be attached to the derrick only for the duration of the Weatherford-Lamb casing job. This job was expected to last two or three days. Upon completion of its casing job, Weatherford-Lamb intended to transport the stabbing board, along with its other equipment, to the next job. It is also important that the stabbing board fell before the attachment of the board to the derrick was complete. At the time the board fell, it was secured loosely to the derrick by cables. The board did not have the necessary stability to safely support a workman until

aluminum braces were secured from the board to girts on the derrick.

No universally applicable test has evolved from the Louisiana courts which permits ready determination of whether this stabbing board was an appurtenance of Rig 37. In *Olsen,* a water heater in the living quarters for housing drilling personnel on a stationary platform was considered an appurtenance of the platform. See *Olsen,* p. 1291, n. 12 for a collection of Louisiana cases identifying appliances and attachments which Louisiana courts have considered appurtenances. These include elevators, window fans and electrical wiring. In *Walker v. Tenneco Oil Co.,* 615 F.2d 1121 (5th Cir.1980), we declined to decide whether a portable snubbing unit (a hydraulic jacking mechanism) which was secured to the well by eight bolts, was an appurtenance. It was unnecessary to decide this issue because we found no defect in that snubbing unit. In discussing the characteristics of appliances or attachments which Louisiana courts had held to be appurtenances we noted: "Most of these items share a common characteristic not found in the snubbing unit: they were, with some degree of permanence, an integral part of the building." 615 F.2d at 1124.

In *Champagne v. Chevron, U.S.A.,* 605 F.2d 934 (5th Cir.1979), we affirmed a finding that a fire hose connected to the drilling rig's water system was an appurtenance.

*Fonseca v. Marlin Marine Corp.,* 410 So.2d 674 (La.1981) is the most recent decision on this question by the Louisiana Supreme Court. In *Fonseca,* the plaintiff sought recovery for injuries he suffered when he fell from the partially completed second floor of a barn. Plaintiff, a carpenter, had been hired to complete construction on the partially built barn. When plaintiff began his task, the floor joists were in place on the upper level of the barn. Boards had been temporarily laid (without being nailed) across the joists to serve as scaffolding. Plaintiff stepped on the end of one of these boards that did not

reach a supporting joist, the end of the board flipped up and caused plaintiff to fall.

The court in its initial opinion imposed liability on the owner of the barn under both Articles 2322 and 2317. On rehearing, however, the court withdrew its imposition of liability under Article 2322 and bottomed its holding solely on Articles 2317 and 2315. The court, in its decision on rehearing, noted:

However, we express doubt as to that portion of our original opinion holding Cenac liable as owner under CC Article 2322. The group of boards were placed there temporarily by Cenac, were removed by plaintiff after the roofing work was completed, and were eventually used to construct the floor of the hay loft. Arguably, the positioning of the group of boards used for temporary scaffolding did not constitute a vice in the original construction, but rather the boards were merely an apparatus used by contractors in performing that construction, never intended as a permanent part of the building for whose original construction vices the Code holds the owner of the building liable. However, since we agree that Cenac is otherwise liable for plaintiff's injuries, we need not determine his liability as owner of the building.

410 So.2d at 683.

The scaffold boards in *Fonseca* are closely analogous to the stabbing board in the case at hand. Both were intended for temporary use; neither had been permanently attached to the main structure. Scaffold boards and stabbing boards are more accurately characterized as workmen's tools or implements which go with the workmen from job to job rather than permanent attachments to any particular building or structure.

A recent amendment to the Louisiana Civil Code is also significant. Effective January 1, 1979, Article 466, Louisiana Civil Code, was amended to provide: "Things

permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts. *Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached."* (emphasis added) Although the primary purpose of Article 466 is to aid in the definition of property rights between lessors, lessees and their respective creditors, whether an attachment is considered permanent under this article is one factor which should be considered in deciding whether the attachment is an appurtenance.[1]

The authorities discussed above lead us to conclude that the stabbing board which was intended for temporary use aboard this rig and which had not been completely attached to the derrick when it fell is not an appurtenance of the drilling rig.

Even if the stabbing board is considered an appurtenance, we are unable to conclude that the board fell because of the board's "ruin" due to vice of construction or neglect to repair.

In *Temple v. General Insurance Co. of America,* 306 So.2d 915 (La.App. 1st Cir. 1974), plaintiff was employed by a contractor engaged by the owner of a building to reconstruct a brick wall which had been destroyed by a windstorm. Plaintiff was on a scaffold working on the wall when the brick wall collapsed and caused plaintiff to fall and sustain injuries. The court held that: "Petitioner has failed to sustain his burden of proving the fall of the wall was due to 'ruin' caused by 'neglect to repair it' or a 'vice' in its original construction .... Counsel has not cited to us any case which holds these codal articles [2322 and 670] applicable to the construction or repair of a building. We find no liability herein."

---

1. In view of the intervening *Fonseca* decision and the amendment to Article 466, it is doubtful that the Louisiana Supreme Court would agree today with the result we reached in *Champagne v. Chevron, U.S.A.* that a fire hose attached to the rig's water system is an appurtenance.

We agree with the trial court that defendant has no liability under Article 2322, Louisiana Civil Code.

### B.

Plaintiff's alternate theory of liability is predicated on Article 2317, La.Civil Code.[2] The trial court found that under the stipulated facts defendant did not have the stabbing board within its custody and therefore defendant had no liability as a matter of law under Article 2317. See *Loescher v. Parr*, 324 So.2d 441 (La.1975).

In light of the detailed stipulation, we concur in the conclusion reached by the trial court. The parties stipulated: that none of the equipment, including the stabbing board, was owned by defendant; no employee of defendant was in the derrick assisting in rigging up the equipment; the casing operation was not the responsibility of the defendant; Weatherford-Lamb was in complete charge of the operation of rigging up the stabbing board; defendant was not responsible for inspecting Weatherford-Lamb's equipment prior to its use on the rig; it was not anticipated that any of defendant's personnel would utilize the stabbing board during the casing operation.

In the face of these detailed stipulations, we perceive no theory on which plaintiff could establish that the stabbing board was within the custody of Helmerich & Payne at the time of the accident. The trial court correctly concluded that defendant had no liability under Article 2317.

AFFIRMED.

---

**2.** Article 2317 provides:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, *or of the things which we have in our custody. . . .* (Emphasis added)