**Jimmy Randall DOBBS,**
**Plaintiff-Appellee,**

v.

**GULF OIL COMPANY,**
**Defendant-Appellant.**

No. 83–3634.

United States Court of Appeals,
Fifth Circuit.

May 9, 1985.

Henderson, Hanemann & Morris, Carlos E. Lazarus, Jr., Sidney L. Patin, Houma, La., for defendant-appellant.

Salvador E. Gutierrez, Jr., Mary Ann Hand, New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, WISDOM, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

This diversity case, controlled by Louisiana substantive law, concerns a suit by an injured oilfield worker against a platform owner. The claim is based on strict liability under articles 2317 and 2322 of the

Louisiana Civil Code and on negligence under articles 2315 and 2316 of the Code. The jury found the defendant strictly liable under articles 2317 and 2322 for the plaintiff's damages. The defendants appeal from the district court's entry of judgment on the verdict. We affirm.

I.

Jimmy Dobbs, a roustabout employed by Cyclops Drilling Co. (Cyclops), was injured on September 17, 1980 when he slipped and fell on the stairs leading to a crane on a Cyclops drilling rig. The rig was located on a fixed platform, owned by the defendant Gulf Oil Co. (Gulf), off the coast of Louisiana on the Outer Continental Shelf. Cyclops, under contract with Gulf, was engaged in drilling new wells for the production of oil and gas.

Dobbs's accident occurred on the second day of his first shift on the Cyclops rig as the drilling crew was preparing to unload a supply boat docked at the Gulf platform. Dobbs testified at trial that he was instructed by his boss, the Cyclops crane operator, to carry a bucket of hydraulic fluid to the crane operator to fill the tank of the crane. As Dobbs ascended the metal ladder leading to the cab of the crane, he slipped in a pool of hydraulic fluid that had accumulated on the steps of the ladder. Dobbs testified that the hydraulic fluid that had accumulated on the ladder originated from a corroded fitting which connected a hydraulic fluid hose to the pressure tank on the crane. As a result of the accident, Dobbs underwent a series of knee operations, continues to suffer pain, and can undertake only light physical activity.

Dobbs filed suit against Gulf alleging negligence under articles 2315 and 2316 [1] and strict liability under articles 2317 and 2322 of the Louisiana Civil Code. The trial court instructed the jury on each of these theories of liability. The jury found Gulf liable to Dobbs under article 2317 as custodian of a defective thing and under article 2322 as owner of a building that had fallen to ruin, [2] and awarded Dobbs $153,000 in damages. Gulf appeals from the trial court's final judgment entered on the verdict, alleging that the verdict rested on improper jury instructions on the plaintiff's article 2317 and 2322 claims and, alternatively, that the evidence in the record is insufficient to support the jury's verdict on these claims. We find that the trial court properly instructed the jury on the Louisiana law of strict liability of the custodian of a defective thing under La.Civil Code article 2317, and that the evidence in the record is sufficient to uphold the jury's finding of liability under this article. Our disposition of this issue renders it unnecessary for us to address Gulf's challenges to the jury's alternative finding of liability under article 2322.

II.

After instructing the jury on each of the plaintiff's theories of liability, the trial court submitted to the jury a special verdict [3] containing separate interrogatories based on each of the theories under which Gulf could be held liable. [4] The inter-

---

**1.** Article 2315, which provides the basis for all tort law in Louisiana, reads in pertinent part as follows: "Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it." La.Civ.Code art. 2315(A) (West Supp.1985). Article 2316 provides: "Every person is responsible for the damage he occasions not merely by his act but by his negligence, imprudence, or his want of skill." *Id.* art. 2316.

**2.** Because the jury found Gulf strictly liable under articles 2317 and 2322 as set forth in the Jury Interrogatories—Part I, it did not reach the issue of negligence, as set forth in the Jury Interrogatories—Part II.

**3.** Rule 49(a) of the Federal Rules of Civil Procedure provides that "[t]he court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact". The court has complete discretion as to whether a general or special verdict is to be used and as to the form of the special interrogatories used in a special verdict. *Id.*

**4.** The Jury Interrogatories—Part I dealt with article 2317 and 2322 liability. Questions one through three read as follows:

"1. Was the crane attached in a manner such that it became an appurtenant part of the platform owned by the defendant, Gulf Oil Corporation?

rogatories were simple, clear, and concise, and, as the Court explained, each contained only one of the issues raised by Dobbs's claims.[5] The court's instructions, coupled with the form of the special verdict, left no room for confusion on the part of the jury; Dobbs could recover under any one of these theories. The jury found Dobbs liable under both articles 2317 and 2322 of the Louisiana Civil Code. The jury verdict must be upheld, therefore, if the finding of liability under either of these theories was proper. For the reasons set forth below, we find the jury verdict on the issue of liability under article 2317 to be proper.

### III.

Article 2317 of the Louisiana Civil Code provides:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

La.Civ.Code art. 2317 (West 1979). This article both defines strict liability under Louisiana law and subjects the custodian of a defective thing to this strict liability. *Hyde v. Chevron U.S.A., Inc.*, 5 Cir.1983, 697 F.2d 614, 618. The Louisiana Supreme Court, in *Loescher v. Parr*, La.1975, 324 So.2d 441, first found article 2317 to have independent legal significance, holding that "[a]rticle 2317 embodies the concept of the legal fault of the guardian of a thing for the damage caused by the defect of his thing". *Id.* at 448.[6]

The *Loescher* Court found that the legal principle of fault underlying article 2317 liability was the same principle as that underlying the forms of strict liability already recognized by Louisiana courts under articles 2318 through 2322[7] of the Civil Code:

injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others, and that his damage occurred through this risk". *Entrevia*, 427 So.2d at 1148.

Article 2322 does not, however, preempt article 2317 in cases such as the one before this court. The two articles set forth separate and independent theories of liability: Article 2317 establishes liability against the custodian of a defective thing; article 2322 establishes liability against the owner of a building that has fallen to ruin. *See generally* Comment, *The Application of Louisiana's Strict Liability Law on the Outer Continental Shelf: A Quandry For Federal Courts*, 28 Loy.L.Rev. 101, 103–105 (1982). When one is injured by a defective thing which is in the custody of the owner of a building or is an appurtenant part of a building, the injured party may proceed against the building owner under either article 2317, article 2322, or both. Whether the plaintiff can recover under either or both theories of liability depends upon whether the plaintiff meets his burden of proof under each of these alternative theories of liability. *See, e.g., Steele v. Helmerich & Payne International Drilling Co.*, 5 Cir.1984, 738 F.2d 703, 706; *Matthews v. Ashland Chemical, Inc.*, 5 Cir. 1983, 703 F.2d 921.

---

Answer: ____ Yes or ____ No
"2. Was the crane in the custody or control of the defendant, Gulf Oil Corporation? Answer: ____ Yes or ____ No
"3. Was there a defect in the crane? Answer: ____ Yes or ____ No"

The jury answered "yes" to each of the above interrogatories. The jury also found that the defect in the crane was a proximate cause of Dobbs's damages and that Dobbs was not contributorily negligent.

5. The trial judge instructed the jury that interrogatory number one focused on the issue involved in Dobbs's claim under article 2322 of the Louisiana Civil Code and that interrogatory number two focused on the issue involved in Dobbs's claim under article 2317. The court advised the jury that if it answered question one or two in the affirmative, it must proceed to question three, concerning a defect in the crane, which applied to both the article 2317 and 2322 theories of liability. The court emphasized that questions one and two dealt with two distinct and independent theories of liability.

6. Article 2322 further refines article 2317 liability as it applies to the owner of a building that has fallen to ruin. Article 2322 provides: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is a result of a vice in its original construction." La.Civ.Code Art. 2322 (West 1979). To recover in strict liability against the owner of a building, "the

7. Articles 2318 through 2322 contain the "modifications" referred to in the last sentence of article 2317; they provide "specific instances in which a person may be held liable for damage caused by a person or thing in his custody". *Hyde v. Chevron U.S.A., Inc.*, 5 Cir.1983, 697

"When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct creates an unreasonable risk of injuries to others."

*Loescher,* 324 So.2d at 446, cited with approval in *Entrevia v. Hood,* La.1983, 427 So.2d 1146, 1148. Accordingly, to prevail in an action under article 2317, the plaintiff must prove: 1) that the thing that caused the damage or injury was in the custody or care of the defendant, 2) that there was a vice or defect in the thing, and 3) that the vice or defect caused the damage or injury. *Loescher,* 324 So.2d at 446–47, 449; *Entrevia,* 427 So.2d at 1148.

■ The things in one's care or custody are those things over which one maintains supervision and control and from which one derives some benefit. *Loescher,* 324 So.2d at 449 n. 7 (quoting Verlander, We Are Responsible ..., 2 Tulane Civil Law Forum No. 2 61 (1974)); *Goudchaux v. State Farm Fire & Casualty Co.,* La. App. 3 Cir.1981, 407 So.2d 1317, 1320, *cert. denied,* 1982, 412 So.2d 1114. A defective

thing is one that poses an unreasonable risk of harm or injury to others. *Loescher,* 324 So.2d at 446; *Entrevia,* 427 So.2d at 1148. The determination whether a risk is unreasonable requires "a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations". *Entrevia,* 427 So.2d at 1149 (*quoting Langlois v. Allied Chemical Corporation,* 1971, 258 La. 1067, 1084, 249 So.2d 133, 140).

■ The district court in the instant case properly instructed the jury on the elements of an article 2317 claim.[8] The court defined the terms "custody" and "defect" or "unreasonable risk" in accordance with the Louisiana case law as set forth above.[9] We therefore find no error in the court's instructions to the jury on Dobb's article 2317 claim. Accordingly, we must uphold the jury's verdict on article 2317 liability and the judgment in favor of the plaintiff unless, as Gulf argues on appeal, the jury's finding of Gulf's liability as custodian of a defective crane is based on insufficient evidence.

## IV.

■ At the close of Dobb's case before the trial court, Gulf moved the court for a directed verdict on the issue of liability under article 2317.[10] The court took Gulf's motion under advisement and sub-

---

F.2d 614, 618–19; *see also Loescher v. Parr,* La.1975, 324 So.2d 441, 447 n. 5.

**8.** After quoting article 2317 to the jury and defining the legal concept of fault on which strict liability of the custodian of a defective thing is based, the trial court instructed the jury as follows:

The plaintiff must prove in this case that:
(A) The thing in question was defective, i.e., that it posed an unreasonable risk of harm;
(B) That it was in the custody of the defendant; and
(C) That he was damaged as a result of this defect."

Trial transcript Volume II at p. 40.

**9.** The trial court instructed the jury on custody and unreasonable risk of harm as follows:

"When I say that the thing in question had to be in the custody of the defendant, I mean either that he was the owner of it, or was in a

position to exercise supervision or control over it, and to draw benefit from it.

"When I say that a defect in a thing creates an unreasonable risk of harm to others, I mean that the likelihood that harm might occur and the seriousness of such harm if it did happen outweighs the importance to society of the custody of the thing and the way the owner or custodian has chosen to maintain the thing under the circumstances. This means that you are to weigh the magnitude of the possible harm against the utility of custody of the thing under all the prevailing circumstances."

Trial Transcript Volume II at p. 41.

**10.** Gulf also moved for directed verdicts on the negligence and 2322 liability claims. Because of our disposition of the article 2317 claim, however, we need not reach the issues raised by these motions.

mitted the case to the jury under all three of Dobbs's theories of liability. The jury found that Gulf was the custodian of the crane located on the Cyclops rig on Gulf's platform and that the crane had a defect. The trial court entered judgment on this special verdict. This court can overturn that judgment only "if the facts and inferences point so strongly and overwhelmingly in favor of [Gulf] that the Court believes that reasonable men could not arrive at a contrary verdict". *Boeing Company v. Shipman*, 5 Cir.1969, 411 F.2d 365, 374.[11]

■ Gulf first asserts that the evidence on the question of Gulf's custody of the Cyclops crane was insufficient to submit this issue to the jury. Our review of the record, however, convinces us that there was sufficient evidence on both sides of the custody issue to create a jury question. Dobbs testified in his case in chief that he worked directly for Cyclops and received his instructions from the Cyclops crane operator. He further testified, however, that the Gulf superintendent, one of two Gulf employees on the platform,[12] maintained general supervisory authority over the Cyclops operations and was responsible for seeing that the drilling operations were conducted timely and safely. Dobbs also testified that after his accident he overheard the Gulf representative directing the Cyclops toolpusher, who was in charge of Cyclops's daily operations, to have the crane repaired. According to Dobbs, the Gulf representative advised the crane operator that although the crane had been patched on several occasions before the accident, it continued to leak and required further repair. This evidence tends to support Dobb's assertion that Gulf maintained control over the crane.

Mr. Loflin, the Gulf superintendent who was called as a defense witness, testified that Cyclops, not Gulf, maintained control over the drilling operations and was responsible for the upkeep and repair of the Cyclops rig and equipment. Loflin testified that he had no responsibility for day-to-day inspections or maintenance of the Cyclops equipment nor any supervisory authority over the general drilling operations. He testified on cross-examination, however, that, as Gulf representative, he was concerned for the safety of everyone on the rig and would take the necessary action to correct any unsafe condition on the rig. When he observed or became aware of an unsafe condition, he would direct the Cyclops toolpusher to correct the situation and would expect the toolpusher to do so. Loflin concluded that he was concerned with the safety of the entire crew and with working conditions on the platform; however, this was not wholly his responsibility.

It is clear from this testimony that Cyclops owned the rig and equipment and was responsible for its daily maintenance. Gulf, however, had some responsibility for overseeing the safety of the operations and did consider itself responsible for correcting any unsafe conditions on the rig. Moreover, Gulf derived benefit from the drilling operations in the form of revenues from production. This evidence creates a sufficient conflict on the custody issue to create a jury question. "[I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Boeing*, 411 F.2d at 375. We conclude, therefore, that the trial court correctly submitted the issue of custody to the jury, and correctly declined to overturn the jury's finding on that issue.

■ Gulf's second argument, that the evidence on the issue of a defect in the crane was insufficient to present a jury question, also fails on a review of the record. Dobbs testified at trial that the connection between the hydraulic fluid hose and the pressure tank of the crane was corroded and battered to such an ex-

---

11. Federal courts sitting in diversity apply a federal rather than a state test for the sufficiency of the evidence to create a jury question. *Boeing*, 411 F.2d at 368.

12. The second Gulf employee on the platform was the pumper, who maintained the wells that were already in production. He was not involved in the Cyclops drilling operations.

tent that it did not seal properly. He further testified that hydraulic fluid had dripped from this corroded fitting, covering the ladder to the crane and the area below the crane with hydraulic fluid. It was this fluid that Dobbs slipped on while climbing the stairs to the cab of the crane.

Dobb's testimony as to the condition of the crane was virtually unrebutted. Loflin testified that he did not remember any hydraulic fluid leak on the crane; however, he could not say with certainty whether the condition described by Dobbs had existed on the date of the accident. Loflin had no independent memory of the accident or of the condition of the crane at the time of the accident.

The testimony on the condition of the crane was sufficient to present a jury question on the issue of a defect in the crane. In submitting this question to the jury, the trial court properly instructed the jury that a defect or vice was a condition that created an unreasonable risk of harm. The court further explained to the jury that it must weigh the risk and gravity of the harm created by the defect against the costs to society of eliminating the risk to determine whether an unreasonable risk of harm existed. The jury found that the crane was defective. This finding, grounded on proper instructions and supported by ample evidence in the record, cannot be overturned on appeal.

### V.

The district court correctly instructed the jury on the Louisiana law of strict liability of the custodian of a defective thing under article 2317 of the Louisiana Civil Code. Based upon these instructions and the evidence presented at trial, the jury found that Gulf was the custodian of a defective crane which caused injury to Dobbs. The evidence on the record does not point so strongly and overwhelmingly against a finding of liability under article 2317 that reasonable and fair-minded jurors could not have reached this verdict. This court, therefore, is bound to uphold the jury verdict under article 2317. Because the judg-

ment may stand on the basis of liability under article 2317 alone, we need not reach the issues presented on appeal with respect to the plaintiff's claim under article 2322 of the Louisiana Civil Code. Accordingly, we AFFIRM the judgment of the district court.