**Edward HAAS, Plaintiff-Appellant, Cross-Appellee,**

**v.**

**ATLANTIC RICHFIELD, et al., Defendants-Appellees, Cross-Appellants.**

**No. 85–3031.**

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1986.

Rehearing Denied Oct. 23, 1986.

Benjamin R. Slater, III, Mark E. Van Horn, New Orleans, La., for Edward Haas.

Thomas C. Cowan, W.K. Christovich, New Orleans, La., for Atlantic Richfield.

Before WILLIAMS, GARWOOD and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal arises out of an accident that occurred on an offshore oil production platform. An oilfield worker was injured and sued the platform owner alleging strict liability and negligence under the Louisiana Civil Code. The jury found the platform owner strictly liable and the plaintiff 70% contributorily negligent. The jury's award of damages was reduced 70% accordingly. The plaintiff and defendant both appeal from the judgment based upon the jury verdict. We affirm on the basic issues but reverse on the matter of prejudgment interest.

## I. FACTS

The plaintiff, Edward Haas, was employed by Otis Engineering Corporation (Otis) as a wireline specialist trainee. The defendant Atlantic Richfield Company (ARCO) contracted with Otis for Otis to perform wireline work on ARCO's fixed platform located off the coast of Louisiana on the Outer Continental Shelf. This action admittedly is governed by the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–1356, since the accident occurred

on a fixed platform in the Gulf of Mexico. Under OCSLA, the law of Louisiana governs since Louisiana is the adjacent state. *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).

Otis lost a string of wireline tools in Well B–12–D on August 7, 1980. Ten days later, Doyle Henson, an ARCO platform operator, noticed that the string of tools had surfaced and had become lodged in the lower of two master valves located on the wellhead. Henson closed the lower master valve to shut the string of tools in place. He reported this occurrence to his supervisor, Robert Scott, a maintenance foreman for ARCO, who ordered Otis to remove the tools.

Plaintiff, Haas, and his supervisor, Steve Leverette, were sent to perform the job. In order to get access to the tools inside the well, the men had to attach what is commonly known as a tree connection device to the top of the wellhead "tree". This device consists of a nut, termed a wash nipple adapter, which is attached to a pipe that is approximately a foot long. Haas obtained a tree connection device from another wellhead on the platform. After inspecting it, Haas handed the tree connection device to Leverette who attached it to the wellhead. Leverette then climbed down from the wellhead "tree", and went to the top deck. Haas took Leverette's place on the wellhead "tree". Leverette lowered Otis equipment onto the tree connection device from his vantage point. This equipment was already attached and consisted of a wire valve, a lubricator, and a stuffing box. Haas guided the equipment onto the tree connection device, and connected them. Next, it was necessary for the pressure in the lubricator to be equalized to the pressure in the wellhead. Rather than use a pressure gauge on the lubricator to determine the pressure, the plaintiff merely listened "for the gas to

stop rushing". After the plaintiff thought equalization had occurred, he opened the swab valve of the wellhead. The trapped tools then shot up the wellhead, disconnecting the tree connector. The plaintiff was struck in his left arm near the elbow by a piece of flying equipment.

As a result of the accident, Haas has a fifteen percent permanent disability of his arm. He also has experienced a hearing loss in his left ear. Haas secured work with another wireline service two years later. He was fired nearly a year after for forging some checks on the account of his then employer. The reason for his discharge is stated because it is relevant to the damage issue as this opinion explains later.

Haas brought suit against ARCO alleging negligence under Article 2316 and strict liability under Articles 2317 and 2322 of the Louisiana Civil Code. The jury found strict liability against ARCO but only under Article 2317. The jury also found Haas seventy percent at fault. Both parties appeal. ARCO contends that the district court should not have submitted an Article 2317 issue to the jury. Haas attacks the amount of damages awarded based upon the jury verdict, particularly for the reduction of the damages by 70% because of the finding of negligence against him. He also attacks the overall damages found on the ground that they are inadequate.

## II. ARTICLE 2317

ARCO contends the district court erred in submitting both Article 2317 and Article 2322 to the jury. Article 2317 imposes strict liability upon an individual for the damage caused by things in his or her custody.[1] *Loescher v. Parr*, 324 So.2d 441, 448 (La.1975). Article 2322 holds the owner of the building strictly liable for dam-

---

1. Article 2317 provides:
 We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications. (None of which are relevant to this case)

ages arising from the "ruin" of the building.[2]

■ ARCO argues that Article 2317 is a general strict liability statute that should not apply when a more specific strict liability statute such as Article 2322 is applicable. ARCO's contention is that since the offshore platform constitutes a building under Article 2322, *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1290 (La.1978), this case is exclusively governed by the specific statute dealing with buildings—Article 2322. We rejected this identical argument in *Dobbs v. Gulf Oil Co.*, 759 F.2d 1213, 1216 n. 6 (5th Cir.1985), stating that Article 2322 does not preempt Article 2317 in cases involving a building; the two articles set out separate and independent theories of liability. A plaintiff may, therefore, proceed against a building owner under either Article 2317 or Article 2322, or both. The district court properly submitted to the jury the separate theory of recovery under each article.

ARCO next contends that Haas failed to prove that ARCO had "custody" as required by the Code. Haas proceeded under two theories, first, that the wellhead was defective because of the tools trapped within it, and second, that the tree connection device was defective. ARCO's custody of its own wellhead is not contested. Consequently, we consider only whether ARCO had custody of the tree connection device. We turn to the language of our late colleague, Judge Albert Tate, for the definition of custody. Judge Tate, then a Justice on the Louisiana Supreme Court, pointed out that the statutory phrase "in our custody" is a translation of "sous sa garde" from the French Civil Code and that this translation does not fully express the concept of the "garde" of a "thing." He noted that one may lose the actual physical custody of a thing without losing its "garde". *Loescher v. Parr*, 324 So.2d at 447 n. 6. The things in one's garde are "those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them." *Id.* at 449 n. 7.[3]

ARCO strenuously argues that Haas' employer, Otis, had custody of the connection device. In support, ARCO argues that only Otis employees used the tree connector, and Otis maintained and stored the tree connector. ARCO's argument, however, overlooks its general supervisory role on the platform. The resolution of this issue is controlled by *Dobbs v. Gulf Oil Co.*, 759 F.2d 1213 (5th Cir.1985). In *Dobbs*, we held that there was sufficient evidence in that case for the jury to find that the platform owner had custody of a crane that was owned and maintained by another because the platform owner had some responsibility for overseeing the safety of operations and it derived benefits from the drilling operation.[4]

■ In the instant case there is evidence that ARCO had control over the operations on the platform. The evidence is similar to that in *Dobbs*. ARCO's maintenance foreman, Robert Scott, testified that ARCO was responsible for the safety of the operations on the platform. He stated that if he

---

**2.** Article 2322 provides:
> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.

**3.** Ownership is an important, albeit not controlling, element in determining the custody issue. *Willis v. Cajun Electric Power Cooperative, Inc.*, 484 So.2d 726, 730 (La.App.Ct.1986). The ownership of the tree connection device is unknown so it is not a consideration in this case.

**4.** The Louisiana court in *Willis v. Cajun Electric Power Cooperative, Inc.*, 484 So.2d 726 (La.App. Ct.1986), used a similar analysis. In *Willis*, the plaintiff's husband was killed when a crane he was operating at a construction site became unbolted and fell 250 feet. The owner of the construction site was Cajun Electric Power Cooperative, Inc. (CEPCO), which had contracted with the deceased's employer to undertake part of the construction. CEPCO was sued under Article 2317 and 2322. The trial judge submitted only Article 2317 for the jury's consideration. The jury found for the plaintiff. The court reversed the jury's verdict holding that CEPCO did not have the requisite control. But the appellate court drew this conclusion only after determining that CEPCO had not assumed control over the construction project. 484 So.2d at 731.

saw an Otis employee using unsafe equipment or performing a job in an unsafe manner, he would stop the Otis operation. Also, like the platform owner in *Dobbs,* ARCO received benefit from the operations on the platform.

The case ARCO relies upon, *Steele v. Helmerich & Payne Int'l Drilling Co.,* 738 F.2d 703 (5th Cir.1984), is readily distinguishable. In *Steele,* the issue was not whether the lease operator, Shell Oil Company, had custody under Louisiana law. The plaintiff in *Steele* was an employee of Weatherford-Lamb, Inc. which had been placed under contract by Shell to perform casing operations. Weatherford-Lamb operated on a land rig owned by Helmerich & Payne and hired by Shell. We held that Helmerich & Payne did not have custody, reasoning that not only did Helmerich & Payne not own or maintain the stabbing board which caused the injury, but Helmerich & Payne was not in any way responsible for supervising or insuring the safety of the casing operation. 738 F.2d at 707.

Thus, we conclude there was sufficient evidence to raise a question for the jury. The district court properly submitted the issue of custody to the jury, and properly declined to grant ARCO's motions for a directed verdict and judgment notwithstanding the verdict on that issue.[5]

### III. COMPARATIVE NEGLIGENCE AND ARTICLE 2317

The Louisiana Supreme Court in *Bell v. Jet Wheel Blast,* 462 So.2d 166 (La.1985) held that comparative fault may apply in some strict products liability cases. Relying on *Bell* by analogy, Louisiana lower courts similarly have held that comparative fault can apply in Article 2317 cases. *Harper v. State Farm Mutual Automobile Insurance Co.,* 484 So.2d 737, 739 (La.App. Ct.1986); *LaJaunie v. Metropolitan Prop-*

*erty & Liability Insurance,* 481 So.2d 1357, 1364 (La.App.Ct.1985); *Hayes v. Department of Transportation & Development,* 467 So.2d 604, 698 (La.App.Ct.1985); *Holmes v. Department of Highways,* 466 So.2d 811, 824 (La.App.Ct.1985); *Varnado v. Sanders,* 477 So.2d 1205, 1217 (La.App. Ct.1985); *see also, Jones v. T.G. & Y. Stores Co.,* 775 F.2d 663, 665 (5th Cir.1985).

*Bell* cautioned that comparative fault does not apply to all product liability cases and that the application is to be determined on a case-by-case basis. 462 So.2d at 172. The court's principle is that comparative fault does not apply in cases where reduction in recovery would thwart the goals of products liability doctrine. *Id.* at 171.

Relying on *Bell,* Haas argues that his recovery should not be reduced because a long standing Louisiana policy prohibits the application of contributory negligence to employees who are injured while they are under the supervision of their employers. Haas reads *Bell* far too broadly. Although the plaintiff in *Bell* was an employee, *Bell* does not prohibit the application of comparative fault in all accidents involving supervised employees. *Winston v. International Harvester Corp.,* 791 F.2d 430, 433 (5th Cir.1986). Louisiana does not have a blanket ban on the application of comparative negligence in supervised employee cases. There are numerous cases in which a supervised employee's recovery for injury on the job was barred. *E.g., Miller v. Employers Mutual Liability Insurance Co.,* 349 So.2d 1353 (La.App.Ct.1977). Although the courts have properly refused to apply comparative negligence in some cases involving employees under the principles now enunciated in *Bell,* these cases involve situations where the employee is forced to perform an unsafe act or risk the loss of his job. *Miller,* 349 So.2d at 1361; *see e.g., Lewis v. Timco, Inc.,* 736 F.2d 163 (5th

**5.** We are not here concerned with ordinary hand tools, or equivalent items, belonging to the independent contractor or its employees, normally brought on and taken off board by them and not having any sort of semi-permanent situs on or special relationship to the platform such as the special relationship in this case of being attached to and functioning with the wellhead tree equipment. Further, we need not consider Haas' claim that he was entitled to judgment as a matter of law under Article 2322, since we uphold the jury's verdict under Article 2317. *Dobbs,* 759 F.2d at 1216; *Fonseca v. Marlin Marine Corp.,* 410 So.2d 674, 683 (La.1981).

Cir.1984); *Payton v. Travelers Insurance Co.*, 373 So.2d 1324 (La.App.Ct.1979); *Coon v. Blaney*, 353 So.2d 744 (La.App.Ct. 1977). To discern which cases fall into this discrete category, Louisiana courts have formulated the following criteria:

> (1) relative knowledge of the danger by the supervising employee and the injured employee; (2) relative control over the employee's situation; (3) the degree to which the employee's conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger.

*Miller*, 349 So.2d at 1362.

■ We find under these principles of Louisiana law that comparative fault is properly applicable in this case. The employee was not forced by his job to perform an unsafe act. In large measure he voluntarily created the hazards that resulted in the injury. ARCO pursued two theories of contributory negligence at trial. It argued first that Haas negligently opened the swab valve before the pressure in the pump had equalized, and second, that Haas negligently used a worn out tree connection device. The evidence supports a finding of comparative fault under either theory. Haas, not his supervisor, chose the tree connection device for the job, and there was no indication that this was the only such device available. *Cf. Payton*, 373 So.2d at 1328. When shown the tree connection device at trial, Haas admitted that such a decrepit piece of equipment should not have been used. The evidence also supports the conclusion that Haas, not his supervisor, controlled the opening of the swab valve, and Haas opened it prematurely. Haas was well aware that the valve should not have been opened until the pressure in the well had equalized. He did not use a pressure gauge to check the pressure. He merely guessed by the hissing. We conclude that the jury could properly find that Haas was seventy percent at fault.

■ Haas next contends that the comparative negligence instructions given the jury incorrectly stated the law. First, he argues that the jury should have been instructed to not consider any negligence of Otis, Haas' employer, in determining Haas' negligence. As a result of the failure so to instruct, Haas asserts that the jury imputed to him negligence on the part of Otis. Haas did not request such an instruction or object to its omission. We can only consider whether the failure so to instruct was plain error, *Bissett v. Ply-Gem Industries, Inc.*, 533 F.2d 142, 145 (5th Cir.1976). We conclude it was not. The court's instructions clearly explained that any fault was to be apportioned between the parties in the case, Haas and ARCO. The critical point is that ARCO's quantum of liability was the same under these instructions whether other negligence was attributable to Haas or to Otis or to both. Haas' claim that the jury erroneously saddled Haas with Otis' fault is premised on the jury disregarding the instructions and the law and is at best mere speculation and conjecture.

■ Second, Haas argues that the trial court erroneously instructed the jury on the defenses to Article 2317 and this error resulted in an inconsistent verdict. The court submitted three defenses: victim fault, comparative negligence, and assumption of the risk. Again, Haas failed to object to these instructions at trial but now argues that it was improper to submit all three because victim fault subsumes both assumption of the risk and comparative negligence. He argues that the jury's verdict, therefore, is inconsistent in clearing Haas of victim fault yet finding him negligent.

We do not find plain error. Under the plain error rule, Haas must not only show that the instructions incorrectly stated the law, but that the instructions were probably responsible for an incorrect verdict. *Rodrigue v. Dixilyn Corp.*, 620 F.2d 537, 541 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). This Haas cannot do. He argues essentially that the jury considered the issue of comparative negligence twice, and answer-

ed the two considerations inconsistently. The district judge only instructed the jury on comparative negligence once. While he did submit separate instructions for assumption of the risk, comparative negligence, and victim fault, he gave victim fault an independent meaning apart from assumption of the risk and comparative negligence, defining it as the situation when the plaintiff's conduct is the sole cause of the accident.[6] We need not express an opinion as to the correctness of the separate victim fault instruction under Louisiana law because the jury's answers based upon the instructions given were not inconsistent and could not have been responsible for an incorrect verdict.

## IV. DAMAGES

Haas argues that the district court abused its discretion in refusing to grant him a new trial because the damages are grossly inadequate. The jury awarded Haas $25,000 for past lost wages, $10,000 for future lost wages, and $25,000 for past, present, and future pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, and bodily injury for a total of $60,000. Medical expenses of $21,644.11 were stipulated and added to the award. The award was then reduced by 70%, the percentage of Haas' fault, leaving $24,493.23.[7]

■ Haas claims the award for lost wages is grossly inadequate in light of the testimony of his economics expert. The expert calculated Haas' past lost wages to be $61,605, and his future loss of earnings to be $422,076. Calculations such as these are only a suggested guideline for a jury. *Payton v. Travelers Insurance Co.*, 373 So.2d 1324, 1330 (La.App.Ct.1979). In determining past lost wages the jury was free to consider, for example, the evidence of higher discount rates and Haas' ability to mitigate damages. Similarly, the jury had before it evidence received without objection that Haas' continuing future inability to obtain employment could have been largely attributable not to his disabilities but to the fact that he had been convicted of forgery committed against a subsequent employer who had hired him with his disabilities. We conclude that the jury acted within its discretion in awarding $25,000 for past lost wages and $10,000 for future lost wages.

■ Haas also attacks the $25,000 intangibles award arguing that this amount barely covers his medical expenses. We cannot accept an asserted relationship between the medical expenses and intangible elements of damages. Medical expenses require mere mathematical calculations to establish, and indeed were stipulated to in this case. The jury and the trial court are in a better position than an appellate court to adopt a suitable guide for monetary

---

6. The victim fault instruction apparently was derived from Judge Tate's language in *Rodrigue v. Dixilyn Corp.*:

In *Loescher* and *Olsen* the Louisiana court did not have occasion to address the issue of the third defense to strict liability under the Civil Code—i.e., the fault of the victim (here at issue). However, to be consistent with the stated criteria of the other two defenses, the victim's fault should be in the nature of an independent and superseding cause of his damages not imputable to the defendant, in order to absolve a defendant of its responsibility for damages caused by the defect of a thing for which he is strictly liable.

620 F.2d at 542. *See also, Broussard v. Yellow Freight Lines, Inc.*, 464 So.2d 987 (La.App.Ct. 1985) (comparative negligence inapplicable when plaintiff's fault is the sole cause of the accident).

7. Otis and Highlands Insurance Company, Otis' compensation insurer, intervened for reimbursement of compensation and medical payments made to Haas, in the stipulated amount of $78,196.00. At the trial level, Haas took the position that the intervenors were not entitled to any of the award, while the intervenors claimed the entire award. These parties entered a stipulation whereby the intervenors were paid $7,500 from the award. Haas now argues that the district court erred when it allocated the award between the intervenor and himself. Although the stipulation expressly reserved the right to appeal this issue, we have no authority to hear this claim. The intervenors were dismissed as parties to this appeal on October 24, 1985. We cannot dispose of claims against a party not before this Court. *Energetics, Inc. v. Allied Bank of Texas*, 784 F.2d 1300, 1305 (5th Cir.1986).

value of the intangibles and to determine a proper amount. *Vidrine v. Kansas City Southern Railway Co.,* 466 F.2d 1217, 1223 (5th Cir.1972). We do not find $25,000 grossly inadequate. In sum, we cannot say the district court abused its discretion in denying Haas' motion for a new trial.

 Finally, Haas contends that the district court erred by not awarding him prejudgment interest on his award. Here we agree. The law is stated in *Smith v. Shell Oil Co.,* 746 F.2d 1087 (5th Cir.1984). In *Smith* the trial court rejected the application of prejudgment interest in an OCS-LA action based on "surrogate" Louisiana law. We reversed and held that prejudgment interest should be awarded. In *Smith* we relied upon *Olsen v. Shell Oil Co.,* 708 F.2d 976 (5th Cir.1983), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984), which held that prejudgment interest in an OCSLA case was not barred under 28 U.S.C. § 1961, but "might be justified by other principles of law." 708 F.2d at 984. *Olsen* further stated that such a principle is the Louisiana statute which provides for interest from the date of judicial demand, La.Rev.Stat. § 13:4203. Thus, as in *Smith,* we reverse and remand for modification of the judgment to include prejudgment interest in accordance with Louisiana law.

We affirm the judgment below with the exception of the denial of prejudgment interest. On that issue alone we remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.