Robert BARTHOLOMEW, Jr., and Ann Bryant Bartholomew, Plaintiffs-Appellees Cross-Appellants,

and

Liberty Mutual Insurance Company, Intervenor-Appellee Cross-Appellant,

v.

CNG PRODUCING COMPANY, Defendant-Appellant Cross-Appellee Appellee.

No. 87–4265

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1987.

---

Wood Brown, III, New Orleans, La., for CNG Producing Co.

J.B. Jones, Jr., Cameron, La., Wilford D. Carter, Lake Charles, La., for Bartholomew.

Kenny M. Charbonnet, Metairie, La., for Liberty Mut. Ins. Co.

Before POLITZ, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

In this dispute involving the Outer Continental Shelf Lands Act (OCSLA), the defendant CNG Producing Company appeals from the district court's judgment based upon the jury verdict. By way of cross-appeal, the plaintiffs, Robert Bartholomew, Jr., and Ann Bryant Bartholomew, attack the district court's award of postjudgment interest at a rate lower than that prescribed by Louisiana law as improper and also assert that the overall award of damages is inadequate. We reject the contentions of both parties and affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Robert Bartholomew, Jr., was injured on October 30, 1984, while working as a roughneck on an offshore production platform on the outer Continental Shelf off the Louisiana coast. At all material times, Bartholomew was an employee of Booker Drilling Company. Booker was working as an independent contractor for CNG Producing Company, who owned and operated the offshore platform. Under the contract between CNG and Booker, CNG reserved the right to inspect all work performed on the rig. To exercise this right of inspection, CNG relied primarily on two "company men." One of these men was E.W. Farrar, Jr., an independent consultant, and the other was J.T. Madison, a salaried full-time employee of CNG. These men were to ensure that drilling operations on the platform were conducted in a safe and efficient manner.

At the time of the accident, Bartholomew and the driller, Perry Gill, were setting slips, an operation which involved putting pipe into the well hole. The rig floor on which the men were working was wet and muddy. As a result of the floor's condition, Bartholomew slipped and twisted his back, sustaining the injuries to his back

which form the basis of this lawsuit.[1] In the subsequent jury trial, Bartholomew testified that the reason the rig floor was wet and muddy was because the CNG "company man," J.T. Madison, whom Bartholomew referred to as "Mad Dog," had instructed the driller, Gill, not to stop the drilling operation to wash off the floor, but to do so afterwards.

Ultimately, the jury determined that CNG was negligent, finding CNG to be thirty percent at fault for Bartholomew's injuries. We note at this time that CNG failed to move for a directed verdict or a judgment notwithstanding the verdict.[2] Additionally, the jury awarded $325,000 for damages suffered by Bartholomew as a result of the accident and $5,000 to Ann Bartholomew for her loss of consortium and services. The district court also awarded the Bartholomews prejudgment interest at the rate of twelve percent per annum from the date of judicial demand until entry of the judgment and awarded interest thereafter at the rate prescribed by 28 U.S.C. § 1961 until payment of the judgment by CNG. Both parties appeal the district court's judgment.

## II. DISCUSSION

### A. *The OCSLA*

■ Bartholomew was injured on an offshore fixed platform located on the outer Continental Shelf off the coast of Louisiana. The Outer Continental Shelf Lands Act (OCSLA) provides that federal jurisdiction extends to

the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and *all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, . . .,* to the same extent as if the outer Continental Shelf were an area

of exclusive Federal jurisdiction located within a State: . . . .

43 U.S.C. § 1333(a)(1) (emphasis added). Both parties in the instant case attempt to characterize the jurisdictional basis of this lawsuit as one premised on diversity of citizenship pursuant to 28 U.S.C. § 1332. This characterization is incorrect. Since the accident occurred on an offshore platform located on the outer Continental Shelf, the appropriate basis of jurisdiction for this claim is the OCSLA; therefore, the applicable law in the instant case is defined by the OCSLA as follows:

To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent state, . . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, . . . .

43 U.S.C. § 1333(a)(2)(A). Interpreting the above provision, the Supreme Court, in *Rodrigue v. Aetna Casualty Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), stated that the law to be applied in actions governed by the OCSLA is "federal law, supplemented by state law of the adjacent state, . . . ." *Id.* at 355, 89 S.Ct. at 1837. Thus, the Act mandates that we technically apply federal law to the instant case, but also apply the law of the adjacent state, Louisiana, as surrogate federal law to the extent that it is not inconsistent with federal laws and regulations. Having determined the applicable law, we next turn to the merits of the parties' contentions on appeal.

### B. *The Liability of CNG*

The Bartholomews brought this negligence suit against CNG, asserting that

---

**1.** Since Booker was insured by Liberty Mutual Insurance Company for liability to its employees, Liberty Mutual intervened in the instant lawsuit to recoup compensation paid to Bartho-

lomew as a result of the injuries which he suffered due to his accident.

**2.** Present appellate counsel were not trial counsel.

CNG was negligent (1) in ordering Bartholomew's employer, Booker, to engage in an unsafe work practice and (2) in contracting with Booker for an inadequate number of floor hands to operate the equipment safely. In defense, CNG argues that as a principal which exercised no operational control over its independent contractor, Booker, CNG was insulated from liability in this case. Because we find that some evidence exists to support a finding by the jury that CNG expressly authorized an unsafe work practice on the platform, we reject CNG's arguments and affirm the district court's judgment without addressing the claim that CNG was negligent in failing to contract for adequate personnel.

■ It is well established that a principal is not liable for the activities of an independent contractor committed in the course of performing its duties under the contract. *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904, 906 (5th Cir.1985); *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir.1984); *Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1014–15 (5th Cir.1980). However, two notable exceptions exist to this general rule. First, a principal may not escape liability arising out of ultrahazardous activities which are contracted out to an independent contractor. Second, and of importance to the instant case, a principal is liable for the acts of an independent contractor if he exercises operational control over those acts or expressly or impliedly authorizes an unsafe practice. *Hawkins*, 766 F.2d at 906; *Wallace*, 727 F.2d at 437; *Williams v. Gervais F. Favrot Co.*, 499 So.2d 623, 625 (La.App.1986), *writ denied*, 503 So.2d 19 (La.1987); *Ewell v. Petro Processors of Louisiana, Inc.*, 364 So.2d 604, 606–07 (La.App.1978), *writ denied*, 366 So.2d 575 (La.1979).

> Where an available safe method, which includes the taking of adequate precautions, will render it at least ordinarily safe, and the work is done in an unsafe manner, the employer will be liable if he has expressly or impliedly authorized the particular manner which will render the work unsafe, and not otherwise.

*Ewell*, 364 So.2d at 607 (quoting Perkowski, *The Employer and the Torts of His Independent Contractor in Louisiana*, 21 Tul.L.Rev. 619, 627 (1947)).

■ Having set forth the general rule and its exceptions, we must now determine the appropriate standard of review to utilize in reviewing the jury's findings. As previously noted, CNG failed to move for a directed verdict or a judgment notwithstanding the verdict at the trial level. This Court has consistently held that it will not review the sufficiency of the evidence supporting a jury finding in the absence of a directed verdict or motion for judgment notwithstanding the verdict. *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 160 (5th Cir.1985); *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1024 (5th Cir.1979); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir.1978); *Fugitt v. Jones*, 549 F.2d 1001, 1004 (5th Cir.1977). Accordingly, our evidentiary inquiry is limited to whether there was *"any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.'" *Coughlin*, 571 F.2d at 297 (emphasis in original).

In finding that the appropriate standard of review is whether there was *any* evidence to support the jury's finding, we reject CNG's assertion that it was entitled to judgment as a matter of law. The jury expressly found that CNG's negligence was a cause in fact of the injury suffered by Bartholomew on the offshore platform. Thus, the inquiry becomes whether there was any evidence that CNG exercised operational control over its independent contractor, Booker, or expressly or impliedly authorized the unsafe practice which caused Bartholomew's injuries.

■ Bartholomew testified at trial that the company man, J.T. Madison, expressly told the driller, Perry Gill, not to wash the rig floor until after the operation was completed. Bartholomew also testified that the driller was fearful for his job. As a floor hand, Bartholomew took his orders directly from the driller. Bartholomew's

testimony was not directly contradicted by any of CNG's witnesses. In fact, the Booker tool pusher testified that he had heard of some company men ordering the driller to speed up the operations and not to wash down the rig. Emmett Farrar, the other company man for CNG, who was independently employed, testified that he did not know whether or not Madison had ever issued such an order to the driller. Thus, the question was one of Bartholomew's credibility. The jury was entitled to make that credibility determination and did so. On the record before us, we conclude that some evidence supported a finding by the jury that CNG, through its representative on the rig, J.T. Madison, expressly authorized the unsafe practice of failing to wash down the rig floor which eventually caused Bartholomew's accident.

It is submitted by CNG that because Madison possibly gave his order not to wash down the floor two days prior to the accident, CNG was not exercising operational control at the time of the accident and therefore was not liable. Without determining who the company man was at the time of the accident, we conclude that whether Madison was on duty at the time of the accident or whether he gave the order two days prior to the accident is not dispositive. An employee does not stop obeying his employer's orders merely because the employer is no longer present. It is not unrealistic to expect the driller, as well as the floor hands, to continue to conduct operations without washing down the floor, in light of Madison's previous order to do so. Since there was some evidence to support a finding by the jury that CNG expressly authorized an unsafe work practice, we affirm the district court's judgment.

### C. *Prejudgment Interest*

We next address the Bartholomews' claim that the district court erred in not awarding postjudgment interest at a rate of twelve percent, as provided by La.Rev. Stat. § 13:4203. The district court awarded postjudgment interest, but at the rate prescribed by 28 U.S.C. § 1961(a) and (b).[3] Unfortunately, in making this claim, the Bartholomews continue to labor under the mistaken perception that federal court jurisdiction in this case is based on diversity of citizenship. Relying on this mistaken belief, the Bartholomews insist that the substantive law of Louisiana should apply in the instant case; therefore, the Louisiana rate of interest should apply to both prejudgment and postjudgment interest.

However, as we noted earlier, the OCS-LA is the appropriate jurisdictional basis for the Bartholomews' claim. Therefore, Louisiana law only applies to the extent that it is not inconsistent with federal laws and regulations. In the instant case, the district court awarded postjudgment interest at the rate prescribed by 28 U.S.C. § 1961, the federal statute which governs awards of postjudgment interest.

Since Louisiana law provides for prejudgment interest as a substantive right, the district court also awarded interest to the Bartholomews from the date of judicial demand until the entry of judgment at a rate of twelve percent as prescribed by Louisiana law. This Court has repeatedly recognized that 28 U.S.C. § 1961 does not prohibit an award by the district court of prejudgment interest pursuant to La.Rev. Stat. § 13:4203 in an OCSLA case. *Haas v. Atlantic Richfield*, 799 F.2d 1011, 1018 (5th Cir.1986); *Frederick v. Mobil Oil Corp.*, 765 F.2d 442, 449 (5th Cir.1985); *Smith v. Shell Oil Co.*, 746 F.2d 1087, 1097

**3.** 28 U.S.C. § 1961 provides for postjudgment interest at a rate lower than that mandated by Louisiana law. Section 1961(a) provides:

... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the

date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

In any event, we do not decide whether § 1961 applies in diversity suits. Compare *Budge v. Post*, 643 F.2d 372 (1981 5th Cir.) and *G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526 (11th Cir.1985).

(5th Cir.1984); *Olsen v. Shell Oil Co.*, 708 F.2d 976, 984 (5th Cir.1983), *cert. denied*, 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). However, our prior decisions do not permit district courts to supplant federal statutes with state law. If we were to accept the plaintiffs' arguments that Louisiana law should apply to both prejudgment and postjudgment interest in the instant case, we would be applying a state statute to an area already specifically covered by federal law. Such a holding would be in direct conflict with the statutory mandate of the OCSLA. We, therefore, conclude that the district court's award of prejudgment interest at the rate specified by Louisiana law (twelve percent), and the award of postjudgment interest at the rate specified by federal law was not improper.

### D. *Inadequacy of Damages*

Finally, the Bartholomews assert that the damage award of the jury was inadequate. In the instant case, the jury awarded the Bartholomews $325,000 for the damages Robert Bartholomew suffered as a result of his accident and $5,000 to Ann Bartholomew for her loss of consortium and services. "This Court will overturn a jury verdict for inadequacy only upon the strongest of showings." *Thezan v. Maritime Overseas Corp.*, 708 F.2d 175, 182 (5th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). In reviewing the damage award, this Court is limited to determining whether the trier of fact abused its discretion. *Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir.1976). Moreover, damage awards will only be overturned in exceptional cases where such awards are so gross as to be contrary to right reason. *Thezan*, 708 F.2d at 182 (quoting *Bailey v. Southern Pacific Transp. Co.*, 613 F.2d 1385, 1390 (5th Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980)).

The Bartholomews contend that the jury verdict was inadequate when considered in light of the testimony of their economic expert who propounded that Bartholomew's estimated economic loss from his accident would be anywhere between $473,162.87 and $614,314.72. Additionally, the Bartholomews assert that the minimum general damage award for this type of claim is $200,000. In *Haas v. Atlantic Richfield*, this Court explained the function of the testimony of economic experts regarding damages.

Haas claims the award for lost wages is grossly inadequate in light of the testimony of his economics expert. The expert calculated Haas' past lost wages to be $61,605,000 and his future loss of earnings to be $422,076,000. *Calculations such as these are only a suggested guideline for a jury.*

799 F.2d at 1017 (emphasis added). In *Haas*, the Court concluded that the jury was free to consider evidence of higher discount rates, the plaintiff's ability to mitigate damages, and factors which may have prevented the plaintiff from obtaining employment in the future. *Id.*

Similarly, the testimony of the economic expert in the instant case was only a suggested guideline for the jury. The facts and figures of the economic expert were based on predictions as to future economic trends and salary increases of oil field employees in the future. The jury was free to accept or reject those predictions as it saw fit. Additionally, the jury could properly consider Bartholomew's ability to return to the workforce in the future. We do not believe that the award of $325,000 was so gross as to be contrary to right reason. Therefore, we reject Bartholomew's contentions.

### III. CONCLUSION

In sum, we conclude that there was some evidence that CNG expressly authorized the unsafe practice of failing to wash down the rig floor until after operations were completed. Additionally, the district court did not err in awarding prejudgment interest at a rate set by Louisiana law and postjudgment interest at a rate set by federal law. The district court's hybrid award based on federal and state law was exactly the type of application of the OCSLA contemplated by its drafters. Finally, we cannot say that the jury award of $325,000

was so inadequate as to amount to an abuse of discretion on the part of the trier of fact. The judgment of the district court is therefore

AFFIRMED.