**Fred H. AINSWORTH, et al.**

v.

**SHELL OIL COMPANY.**

Civ. A. 85–0141–A.

United States District Court, W.D. Louisiana, Alexandria Division.

Dec. 8, 1986.

Craven, Scott, Weeks & Randow, John W. Scott, Alexandria, La., for Ainsworth.

Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, Randall K. Theunissen, Lafayette, La., for Hercules Offshore Drilling Co.

Arthur A. Crais, Jr., Adams & Reese, James E. Blazek, Scott E. Delacroix and

Edwin C. Laizer, New Orleans, La., for Shell Oil Co.

Lunn, Irion, Johnson, Salley & Carlisle, Brian D. Smith, Shreveport, La., for intervenor.

## RULING

LITTLE, District Judge.

While working for Hercules Offshore Drilling Company, Fred H. Ainsworth was injured. To compensate him and his wife for the damages sustained, this suit was filed against the owner of the structure which had hired Hercules to perform erecting services. That owner was Shell Offshore, Inc. or Shell Oil Company.[1] For purposes of this discussion, the owner of the stationary rig will be referred to simply as "Shell".

Shell claims by summary judgment motion that it is not responsible to the plaintiffs for the damages sustained as a result of Mr. Ainsworth's injury. There is no material factual dispute. Summary judgment is appropriate, according to Shell. Quite predictively, plaintiffs suggest that Shell is responsible and that summary judgment should not be granted. Even when considered in a light most favorable to the non-moving party, plaintiffs' cryptic and argumentative defense, when judged in the light of the recent pearl from the Supreme Court, *Celotex Corp. v. Catrett*, 477 U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) will not turn the tide away from the righteousness of defendant's position. The motion is GRANTED.

As we have stated, the facts are not in dispute. Shell owns a platform permanently affixed to the ocean floor on the outer continental shelf. Shell's purpose in being in that location is to explore for fugacious minerals. The platform can be considered as a giant table in the sea with legs permanently affixed to the ocean bottom. In order to explore for oil and gas, a drilling

rig must be brought to the platform. In other words, some structure must be erected on the platform floor (the tabletop) which will perform the actual mechanics of drilling a well, i.e. inserting a drill bit and pipe into the ocean floor to a designated depth. The erection of the rig was the subject of the previously mentioned Master Drilling Agreement and Marine Bid and Drilling Order between Shell and Hercules (Exhibit A attached to Shell's summary judgment motion filed 15 August 1986).

Hercules was obligated to do the erecting activity. Ainsworth worked for Hercules. During a night shift, Ainsworth dropped a tool, searched for it in the dark and fell into a mud tank. Narrowly stated, plaintiff's injury is directly related to Shell's failure to provide lighting on the rig where plaintiff was working. The lack of lighting caused the accident. The structure upon which the plaintiff was working was the partially erected rig owned and to be operated by Hercules which was affixed, but not permanently, to the defendant's platform.

Summary judgment is a tool used to eliminate applied judicial process to a situation where, in fact, no controversy exists. If applicable, summary judgment accords the moving party a favorable judgment as a matter of law. *Simmons v. Lyons*, 746 F.2d 265, 266 (5th Cir.1984), *citing, Williams v. Shell Oil Company*, 677 F.2d 506, 509 (5th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982); *Dorden v. C.H. Heist Corp.*, 743 F.2d 1135, 1137 (5th Cir.1984) (citations omitted). Fed.R.Civ.P. 56 is well known and will not be reproduced here. Suffice it to say that a majority of the Supreme Court has emoted or issued its interpretation of that rule by offering the following language:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

1. Shell Oil Company was the substantial lessee of a block in the Outer Continental Shelf. See Exhibit F, plaintiffs' reply memorandum filed 8 September 1986. Shell Offshore, Inc. and Hercules entered into a Master Drilling Agreement on 5 September 1982 (defendants' Exhibit A filed 15 August 1986).

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. ——, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986). It is the contention of Shell that an essential element of its liability is its fault or negligence, actual or implied.

■ Shell's appreciation of its exposure is properly founded in Louisiana law, even though the incident in question occurred miles beyond the borders of that state. The Shell platform is stationary and is located in the outer continental shelf. This Court has jurisdiction by application of 43 U.S. § 1331 *et seq.* The law of the state adjacent to the accident site, Louisiana in this case, applies to adjudicate the controversy. 43 U.S.C. § 1333; *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 360, 89 S.Ct. 1835, 1839, 23 L.Ed.2d 360 (1969); and *Rohde v. Southeastern Drilling Co., Inc.*, 667 F.2d 1215, 1217 (5th Cir.1982).

Moving to the meat of the matter, defendant suggests that it is not negligent under the standard enunciated in Civil Code article 2315 nor any jurisprudence interpreting that article.

> Every act whatever of man that causes damage to another obligates him by whose fault it happened to repair it....

Article 2315, La.Civ.C.

A duty-risk analysis is most prominently employed in giving content to the previously described Civil Code article. *Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company*, 242 La. 471, 137 So.2d 298 (1962) is the fountainhead of Louisiana's duty-risk law. In *Dixie Drive It Yourself* the Louisiana Supreme Court announced the standard to be used in determining whether a defendant

has acted negligently, saying that "[t]he essence of the present inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the statute" [allegedly violated by the defendant]. *Id.* 137 So.2d at 304. The Fifth Circuit has described the duty-risk analysis in the following manner:

> The determination of whether the defendant owes a duty to the plaintiff and whether the risk of injury sustained by the plaintiff falls within the ambit of that duty is the crucial portion of this analysis, for it supplants the traditional proximate cause inquiry.

*Andrus v. Trailers Unlimited*, 647 F.2d 556, 558 (5th Cir.1981) (citations omitted). Simply stated, the question is whether the plaintiff is within that class of persons intended to be protected by a given statute or Code article. The traditional elements of negligence must still be proven in order for the plaintiff to recover.

> Under ... articles [2315 and 2316], the elements of a cause of action are fault, causation and damage. The conduct of which the plaintiff complains must be a cause-in-fact of the harm. After determining causation, the Court must also determine what was the duty imposed on defendant, and whether the risk which caused the accident was within the scope of the duty. A breach of a duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles."

*Vicknair v. Hibernia Building Corp.*, 479 So.2d 904, 908–09 (La.1985), *citing, Dunne v. Orleans Parish School Bd.*, 463 So.2d 1267 (La.1985); *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La.1984); *Smith v. Travelers Ins. Co.*, 430 So.2d 55 (La.1983).

Assuming arguendo that plaintiff has established the element of causation, plaintiff must next show that there was a duty on the part of Shell to ensure that the rig was properly lit. In order to determine whether such duty existed, one must categorize the status of plaintiff vis-a-vis Shell. What

is the plaintiff? He was an employee of Hercules. Hercules contracted with Shell. The evidence indicates that Hercules was an independent contractor of Shell. The Master Drilling Agreement provides in part that

> Contractor [Hercules] shall furnish the minimum crew complement specified in the Drilling Order, Section 13, and shall furnish the rig and drilling equipment referred to in the Drilling Order, Section 4, and such other equipment, materials and services as specified in the Drilling Order, Section 5, as are to be furnished by Contractor to Shell.

Master Drilling Agreement pp. 2–3. The relationship between Hercules and Shell was further described on p. 25 of the Agreement:

> 16.1 *Independent Contractor.* Contractor is an independent contractor with respect to performance of all work hereunder and neither Contractor nor anyone employed by Conractor shall be deemed for any purpose to be the employee, agent, servant or representative of Shell in performance of any work or service hereunder. Shell shall have no direction or control of Contractor or its employees and agents except in the results to be obtained. The work performed hereunder shall meet the approval of Shell and be subject to the general right of inspection provided herein for Shell to secure the satisfactory completion thereof.

P. 25 Master Drilling Agreement. It was further provided that "Contractor shall perform and supervise all work...." (p. 25 Master Drilling Agreement).

■ As the principal, Shell was under no duty to supervise the rigging up operation. In *Robideaux v. Hebert*, 118 La. 1089, 43 So. 887 (1907), the Louisiana Supreme Court established the rule that a principal who hires an independent contractor is under no duty to supervise or protect the employees of that independent contractor. *Id.* 43 So. at 889. *See also Olsen v. Shell*, 561 F.2d 1178, 1191 (5th Cir.1977) (" 'The general rule is that the servants of an independent contractor must look to him

(and not to the person with whom he has contracted) for injuries which they receive through his fault or negligence.' ") (citations omitted) (applying La. law); *Daroca v. Metropolitan Life Ins. Co.*, 121 F.2d 917, 919 (5th Cir.1941) ("Plaintiff was neither a tenant nor a third person lawfully, but accidentally, on the premises nor a passerby. He was a workman engaged in making repairs to the building.... As to him there is no doubt whatever the owner was not responsible for any negligence of an independent contractor" (citation omitted).

In a recent interpretation of Louisiana tort law in this area, the Fifth Circuit, sitting in diversity, had the following to say about the liability of a principal to an employee of an independent contractor:

> It is a fundamental principle of tort law that one cannot be liable for negligence based on a failure to act unless one first has a duty to act. This principle is reflected in the general rule that one employing an independent contractor ... is normally not under a duty to take affirmative action to protect the employees of that independent contractor from injury in the course of the contracted work.

*Futo v. Lykes Bros. S.S. Co., Inc.*, 742 F.2d 209, 214 (5th Cir.1984) (citations omitted).

Thus, it is clear that plaintiff has failed to establish an essential element of liability, to wit: duty. There can be no recovery under La.Civ.Code art. 2315.

But does Civil Code article 2317 establish relief for Mr. Ainsworth?

> We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the acts of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

This article creates a theory of strict liability developed, to a great extent, over a decade ago by the late Albert Tate, Jr., when he was a Louisiana Supreme Court Justice and prior to his appointment to the federal Fifth Circuit Court of Appeals. The seminal case is *Loescher v. Parr*, 324

So.2d 441 (La.1975). The philosophy is not muddy. A thing which on account of a vice or defect causes damage while in the care or custody of the owner subjects the owner-guardian-custodian to liability for the damage caused. The fault is supplied by law. Thus, an owner of a tree, which, unknown to the owner, is rotten and falls on a victim will be responsible for the damage suffered by the victim unless the victim was at fault, or a third party was at fault or an irresistible force was the source of the damage. *Loescher v. Parr, supra*, at 449. The language of article 2317 is inapplicable to the case sub judice. The rig is not owned by Shell, nor is it in Shell's custody. The above quoted evidence in regards to the ownership of the rig and the relationship between Hercules and Shell establish the fact that the rig was to be owned and operated by Hercules.

■ Nor was the rig under the direction or control of Shell. Hercules gives much import to the fact that Shell had a representative on the platform. It is true that Shell had a so-called "company man" on the rig at the time of the accident. Louisiana law provides an exception to the rule of non-liability of a principal for the injuries to the employees of his independent contractor when the principal oversees the operations. "[T]he principal may be liable for the acts of the independent contractor over which it has exercised operational control or which it has expressly or impliedly authorized." *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904, 906 (5th Cir.1985), *citing, Wallace v. Oceaneering Int'l.*, 727 F.2d 427, 437 (5th Cir.1984); *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 174 (5th Cir.1979); *Touchstone v. G.B.Q. Corp.*, 596 F.Supp. 805, 815 (E.D.La.1978); *Ewell v. Petro Processors of Louisiana, Inc.*, 364 So.2d 604, 606–07 (La.App.1978), *writ denied*, 366 So.2d 575 (La.1979). This Court is of the opinion that the plaintiff has failed to show the control on the part of Shell necessary to establish liability under article 2317.

In *Wallace, supra*, an offshore oil field diver brought suit against his employer, a diving contractor, the drilling contractor and the owner of an oil well for injuries sustained while on a diving assignment in support of a drilling operation at the oil well. After stating the principle regarding independent contractors, the court observed that there was only one employee of the well owner at the drill site and further that:

> His role was that of the usual "company man" in the offshore oil patch. He monitored the progress of the work of the independent contractors, making sure that the result was what the oil company had bargained for.... Although he could have ordered the work stopped if he observed an obviously dangerous situation, inspections of equipment and the choice of safe work methods were understood by all to be the responsibility of [the drilling contractor], and as to diving equipment and procedures, [the diving contractor].... [The company man] had no actual control or responsibility for the details of the drilling and diving work, but merely inspected progress.

727 F.2d 427, 436–37 (5th Cir.1984). The Court of Appeals found that these facts reflected that the company man had no control over the particular operation in which the diver was injured and that the well owner could not be held liable for the negligence of the independent contractors.

In *Steele v. Helmerich & Payne International Drilling Co.*, 738 F.2d 703 (5th Cir.1984) the issue was whether a stabbing board which was negligently attached to a cable was in the custody and control of the defendant rig owner so as to render the defendant liable under article 2317. In affirming the district court's grant of summary judgment to the defendant in this diversity action, the Fifth Circuit noted the stipulation of the party in regards to their relationship. The stipulation reflected the following:

> [N]one of the equipment, including the stabbing board, was owned by the defendant; no employee of defendant was in the derrick assisting in rigging up the equipment; the casing operation was not the responsibility of the defendant;

1228

Weatherford-Lamb [the casing contractor] was in complete charge of the operation of rigging up the stabbing board; defendant was not responsible for inspecting Weatherford-Lamb's equipment prior to its use on the rig; it was not anticipated that any of defendant's personnel would utilize the stabbing board during the casing operation.

*Id.* at 707. The Master Drilling Agreement supports the following conclusions: The rig, as well as all the equipment being used, was owned by Hercules; no Shell employees assisted in the "rigging up" operations; Hercules was in complete charge of the operation; Shell was not responsible for inspecting Hercules' equipment.

Finally, in *Colleps v. State Farm General Ins. Co.*, 446 So.2d 988 (La.App. 3d Cir. 1984) plaintiff tried to establish that an allegedly defective ladder on which plaintiff had injured himself was in the care and custody of the defendant so as to render the defendant liable under article 2317. In *Colleps* the ladder was owned by the plaintiff. He had brought it to his son-in-law's house to help the latter build a house. The plaintiff argued that the ladder was in the exclusive possession and control of his son-in-law. In affirming the trial court's dismissal of the suit, the Louisiana Third Circuit noted that the plaintiff owned the ladder, allowed persons to use the ladder at the home site, had supervised the placement of the ladder prior to the accident and was using his own ladder at the time of the accident. The court concluded that the plaintiff had "failed to prove custody by [the defendant], an essential element under article 2317. *Id.* at 990. Plaintiff herein has failed to allege facts which would distinguish this case from *Wallace, Steele* and *Colleps*. The key here is that the rig, if defective due to lack of lighting, is brought in the defective condition as a temporary appendage to defendant's "thing" (the platform) and that appendage is neither owned nor controlled by Shell. The element of custody simply isn't present.

Could Civil Code article 2322 afford the plaintiff a basis for recovery?

The owner of a building is answerable for the damage occasioned by its ruin when this is caused by neglect to repair it or when it is the result of a vice in its original construction.

At first blush it would seem so. Authorities such as *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La.1979), *Steele v. Helmerich & Payne*, 738 F.2d 703 (5th Cir.1984) and *Moczygemba v. Danos & Curole Marine Contractors*, 561 F.2d 1149 (5th Cir.1977) could precipitate a logical although superficial analysis as follows:

A fixed drilling platform together with its necessary appurtenances is a building within the contemplation of article 2322. The owner of a fixed platform is liable for injuries resulting from a defective drilling rig even though title to the rig is vested in another and the rig will, at some time, be removed from the platform.

The case of *Olsen v. Shell, supra*, is factually similar to this case. A drilling contractor moved *its* drilling equipment onto a stationary platform. Included in this move was a modular living compound which itself included two electric water heaters. All of the equipment including the rig, the living unit and the water heaters belonged to and would be removed by the contractor. After everything was in place and the contractor's employees were conducting and actively drilling a well, a defective water heater exploded and killed employees of the contractor. In response to substantive questions of Louisiana law certified to it by the U.S. Fifth Circuit Court of Appeals, the Louisiana Supreme Court, again speaking through Albert M. Tate, Jr., concluded that the platform owner, Shell Oil Company, was responsible for the defective water heater moved to the rig by the contractor, installed by the contractor, used by the contractor and which would be removed by the contractor and over which Shell Oil Company never exercised any control either actual or contractual! This rather harsh result stems from article 2322 which makes an owner liable for damages caused by defects in its structure or appurtenances.

In the absence of another statute providing otherwise, the strict liability under article 2322 of the owner of a building for harm caused by defects in its structure or appurtenances imposes a non-delegable duty upon him to keep his building and appurtenances in repair and to be responsible to third persons for harm caused by any defect in the structure or its appurtenances.

*Olsen v. Shell, supra,* at 1291. That language should ice plaintiffs' case and provide an affirmative non-delegable duty on Shell's part to provide lighting on the Hercules rig for the benefit of Mr. Ainsworth, the Hercules employee.

Not so. The difference between *Olsen* and *Ainsworth* is obvious. The rig on the platform in *Olsen* was complete and operational. The personnel hut was affixed, the water heaters were connected, the drilling operation was in process. The rig was a live, vibrant appurtenance to the platform. In *Ainsworth,* the rig was 25–50% complete. Three to four days of work remained before it could be operational (plaintiff's motion for summary judgment p. 15). It (the rig) had not acquired the status of appurtenance to bring it under Shell's article 2322 responsibility. In his deposition taken 23 December 1985 plaintiff, Fred Ainsworth, testified that the construction of the rig was not completed at the time of the accident, that one-fourth of the work had been completed and that it would take three to four more days to finish the construction (Ainsworth deposition pp. 109–110). William Clyde Coward, president of Hercules, testified at his deposition that the rigging up process was 20–25% completed at the time of the accident. He stated that it normally takes ten to twelve days to rig up. When Ainsworth was injured it was the second or third day of the rig up (Coward deposition p. 8). Arthur R. Dunn, Jr. testified that the rig up operation was one-fourth to one-third complete at the time of Ainsworth's injury (Dunn deposition pp. 10–11).

> For an object to qualify as an appurtenance, it must be, with some degree of permanence, an integral part of the building.

*Steele v. Helmerich & Payne Intern Co.,* 565 F.Supp. 993, 997 (E.D.La.1983). This case was affirmed on appeal in 738 F.2d 703 in an opinion written by Judge W. Eugene Davis. The determining factors for classifying something as an appurtenance became exact in that opinion. At page 705 the court stated:

> In determining whether an attachment is an appurtenance of a building the two general considerations are: how securely the addition is attached to the building and the degree of permanence the parties intend for the addition.

The clear teaching of *Steele, supra,* and the authorities cited by the Court is that there must be a complete creation of the tangible property before it can be considered an appurtenance. A partially completed inoperable drilling rig is not an appurtenance. A complete drilling rig has never been completed let alone affixed with any degree of permanence to the platform floor. Liability of a property owner for the ruin or defect of an appurtenance can hardly apply until the object is formed or created in the likeness intended by its creator.

Defendant's motion for summary judgment is GRANTED.