Jimmy Dale PERRY,
Plaintiff–Appellant,

v.

CHEVRON U.S.A., INC., Defendant–
Third Party Plaintiff–Appellee–Appellant–Cross Appellee,

v.

DUAL MARINE CO. OF TEXAS, and
Highlands Insurance Co., Third Party
Defendants–Appellees–Cross–Appellants.

No. 88–3773.

United States Court of Appeals,
Fifth Circuit.

Nov. 6, 1989.

Eldon E. Fallon, Stevan C. Dittman, Kierr, Gainsburgh, Benjamin, Fallon, David & Ates, New Orleans, La., for plaintiff-appellant.

Kennedy J. Gilly, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for Chevron.

Daniel A. Weeb, New Orleans, La., for Highlands.

James F. Holmes, New Orleans, La., for Dual Drilling.

Before BROWN, REAVLEY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

Chevron U.S.A., Inc. (Chevron) executed a contract with Dual Marine Company of Texas (Dual) whereby Dual was to place a drilling rig on Chevron's offshore platform and drill a well, or wells, for oil. While drilling a well for Chevron on the outer Continental Shelf (OCS) off the coast of Louisiana,[1] a Dual employee, Jimmy Perry, was seriously injured by equipment on the rig. Perry sued Chevron to recover damages because of Chevron's negligence or pursuant to Louisiana's strict liability statute. La.Civ.Code Ann. art. 2322 (West 1979). The district court granted Chevron's motion for a directed verdict on the issue of Chevron's negligence. That ruling was not appealed. Perry, however, has appealed the jury verdict in favor of Chevron on the strict liability issue. We affirm.

Chevron filed a third party action against Dual and its insurer, Highlands Insurance Company (Highlands), seeking indemnification as provided in the Chevron/Dual drilling contract. Chevron has appealed the district court's refusal to grant summary judgment for indemnity and insurance. Because Chevron has been absolved of liability, that matter of indemnification is moot. Chevron's appeal is dismissed.

The district court did award Chevron its attorney's fees and defense costs because of the indemnity agreement. Dual and Highlands appeal and we reverse.

I.

*Background*

On April 5, 1979, Chevron executed a drilling contract with Dual. As required by the contract, Dual's Rig No. 24 was transported to and installed on Chevron's platform located on the OCS off the Louisiana coast. On February 27, 1980, Dual began drilling operations. Those persons on the rig responsible for the actual drilling of the

---

**1.** Accordingly, the law of Louisiana is to be applied in resolving the disputes in this case. *See* 43 U.S.C. § 1333(a)(2)(A).

well (the drilling crew) were Dual employees. Also on the rig to oversee the operation was a Chevron employee known as the "Company man."

On June 17, 1986, Jimmy Perry and the drilling crew, of which he was a member, began their seven day hitch on Rig No. 24. From the time they began work on June 17, Perry and the crew had difficulties with a piece of equipment on the rig known as the cathead.

A cathead is a piece of equipment that is used to connect or disconnect joints of pipe as the pipe is lowered into or raised from the well hole. Roughnecks, such as Perry, position large wrenches, or tongs, onto a joint of pipe. These tongs are approximately four feet long and weigh approximately 300 pounds. To the end of the tongs a chain is connected. This chain runs into the cathead. The cathead is operated by a driller. Once the tongs are properly placed on the drill pipe by the roughnecks, the driller activates the cathead. The cathead pulls on the chain. The chain pulls on the tongs and the drill pipe is tightened, or loosened, as required. The driller then disengages the cathead causing the chain to relax. The roughnecks then reset the tongs on the pipe and the driller once again activates the cathead. This process is repeated until the pipe is fully connected, or disconnected.

The problem with the cathead on Rig No. 24 during the period from June 17 until June 20 was that when the driller disengaged the cathead, it would not allow the chain to relax; rather, the cathead caused the chain to remain taut. To continue drilling operations when the cathead failed to produce slack in the chain, the roughnecks would manhandle the tongs and chain to gain the slack necessary to reset the tongs. The dangers posed by the cathead were known by drilling crew members and although alternatives were available (Dual could have rented portable hydraulic tongs or possibly used a different cathead that was on the rig) Dual's drilling crew continued to manhandle the tongs and chain.

On June 20, 1986, Jimmy Perry was working on the rig floor as a roughneck.

After Perry positioned the tongs on a joint of pipe, the driller engaged the cathead causing the chain to tighten. Upon disengaging the cathead, the chain remained taut because of the cathead. Perry stepped in to manhandle the tongs and chain. The chain running from the cathead to the tongs broke causing the tongs to swing around and strike Perry in the side and lower back. Following the accident, the cathead was disassembled. A spring in the cathead was discovered to be broken.

## II.

### A. *Perry's appeal*

Perry appealed the jury verdict on the issue of Chevron's strict liability. Louisiana Civil Code, Article 2322 provides that "[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

To prevail, Perry must demonstrate that Chevron owned a building containing a "ruin" that caused his injuries. *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1289 (La. 1978). A drilling platform is a building for purposes of Article 2322. *Id.* at 1290. Chevron indisputably was the owner of the platform. The jury found the cathead to be an appurtenance to the platform. This finding is not contested on appeal and is supported by substantial evidence. Because the cathead is an appurtenance to Chevron's platform, it is considered a part of the building and Chevron is liable for damages that are caused by its ruinous condition. *See Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 620–21 (5th Cir.1983); *Olsen*, 365 So.2d at 1292. Proving a causal relationship between the ruin of the building and the injury suffered by the plaintiff is an essential element of a viable Article 2322 action. *Hyde*, 697 F.2d at 622. On this point, Perry failed in the trial court. The jury found that the cathead was not the legal cause of Perry's injuries. Perry claims that such a finding was against the great weight of evidence presented at trial and contrary to the law. We disagree.

In his brief, Perry alleges that "[e]xcept for the failure of the spring in the makeup cathead, Mr. Perry's injury and damage would not have occurred." This statement of causation addresses only one of the two branches of causation necessary to find a party responsible for an injury. As the Louisiana courts have noted,

> [a] defendant's conduct is actionable under a theory of negligence or strict liability where it is both a cause in fact of the injury and a legal cause of the harm incurred. The cause in fact test requires that but for the defendant's conduct, the injuries would not have been sustained. The legal causation test requires that there be a substantial relationship between the conduct complained of and the harm incurred.

*Taylor v. Mitcham,* 499 So.2d 173, 175–76 (La.Ct.App.1986).

■ While the jury may have concluded that the cathead was the cause-in-fact of Perry's injuries, they did not find that the cathead was the legal cause of the injuries. The record indicates that the jury specifically considered the issue of legal cause. During their deliberations the jury requested that the court redefine the term. After the court provided the jury with a written definition,[2] the jury found that the cathead was not the legal cause of Perry's injury.

The finding is supported by the evidence. The record indicates that the defective cathead was well-known by the Dual drilling crew, including Perry. Complaints had been made regarding its condition and suggestions made that it be repaired before an injury occurred. Alternative means of connecting and disconnecting joints of pipe were available to the Dual drilling crew.

Notwithstanding all of these factors, Dual continued to operate the rig using the defective cathead. To do so required Dual employees, such as Perry, to expose themselves to danger. At the time of his injury, Perry was about to manhandle the tongs and chain to gain the necessary slack in the chain. Whether Perry did so of his own accord or was directed to by his boss is unclear. Given these facts the jury could reasonably conclude that the legal cause of Perry's injuries was Dual's decision to continue drilling and/or Perry's actions. Because the jury's findings are based on substantial evidence and reasonable inferences, *see Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc), we will not disturb them.

Perry argues that *Hyde* and *Olsen* should control the outcome of this dispute. In *Hyde,* the owner of an offshore platform was held liable for the damages sustained by an employee of a contractor working on the platform when a step in a stairway failed causing the employee to fall. In *Olsen,* an offshore platform owner was found liable for damages sustained by a contractor's employees when a water heater exploded on the platform.

These cases are distinguishable from the case now before the court because in both *Hyde* and *Olsen* the "ruin" was found to be the *legal cause* of the injury. Specifically, in *Hyde,* the court found that the defective step on the platform, which had been welded by a subcontractor, "directly produced or contributed substantially to produce the damage." *Hyde,* 697 F.2d at 622. In *Olsen,* the trial court found that the improper valve on the hot water heater, which had been installed by a contractor, was the

---

2. The following definition of legal cause was provided to the jury at their request during deliberations.

> There must be a causal relation between the defect and the victim's injury. This causal relation is essentially a factual concept that requires a determination of whether the defect was a substantial factor contributing to the plaintiff's injury.
>
> Fault, whether a defect or negligence, may be the legal cause of injury, whenever it appears from the evidence in the case that the fault played a substantial part in bringing about or actually causing the injury; and that the injury was either a direct result or a reasonably probable consequence of the fault.
>
> This does not mean that the law recognizes only one legal cause of injury, consisting of only one factor or thing or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons may operate at the same time, either independently or together to cause injury or damage, and in such case each may be a legal cause.

proximate [legal] cause of the injurious explosion. *Olsen*, 365 So.2d at 1296 app. 1.

*Hyde* and *Olsen* are also distinguishable from the case now before us on a different, yet closely related, basis. Article 2322 imposes a non-delegable duty on the building owner to repair. *Olsen*, 365 So.2d at 1292. In both *Hyde* and *Olsen*, contractors were "repairing" the building (or an appurtenance thereof) and as a result of their negligent repair, injuries were suffered. Because the duty to repair is non-delegable, the building owners were found liable when the (defective) repair was found to be the legal cause of the damages suffered. In our case, the injury was not legally caused by Dual's assumption of Chevron's non-delegable duty to repair. As stated earlier, the jury did not find the building to be the legal cause of the injury at all.

This court has rejected strict liability claims when the actions of a party other than the defendant/building owner have been found to be the cause of the damages. *See Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406 (5th Cir.1989) (platform owner not liable for injury sustained when contractor's employee fell through hole on platform because contractor's negligence, rather than platform or hole, caused plaintiff's injury). We do so again in this case.

■ Perry also alleges that the trial court erred in charging the jury on plaintiff's contributory negligence and in permitting the jury to consider Dual's alleged negligence. Contrary to Perry's contention, it is proper to consider the victim's contributory fault in a strict liability claim brought under Louisiana law. *See Reed v. Shell Offshore Inc.*, 872 F.2d 680, 683–84 (5th Cir.), *modified*, 879 F.2d 151 (5th Cir. 1989); *Hyde*, 697 F.2d at 627–29; La.Civ. Code Ann. art. 2323 (West Supp.1989). It also is proper to consider Dual's fault. *See Reed*, 872 F.2d 680; *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1180–81 (5th Cir. 1987); La.Civ.Code Ann. art. 2324 (West Supp.1989).

■ Assuming *arguendo* that the trial court did err in charging the jury on these matters, it did not result in reversible error. The jury was directed to answer six interrogatories in order. Interrogatories number 1 and number 2 dealt only with elements that are required to be proven to recover under Article 2322. After answering interrogatory number 2 in the negative, the jury went no further. The issue of Dual's and Perry's negligence did not appear until interrogatories number 3 and number 4, respectively. Neither the charges nor the interrogatories raise a "substantial doubt that the jury [was] 'fairly guided in its deliberations.'" *Bode v. Pan Am. World Airways*, 786 F.2d 669, 672 (5th Cir.1986) (quoting *Mid–Texas Communications v. American Tel. & Tel. Co.*, 615 F.2d 1372, 1390 n. 16 (5th Cir.), *cert. denied*, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980)).

■ Finally, Perry contends that it was error to deny his motion for a directed verdict on the issue of his negligence. In reviewing a trial court's decision to deny a motion for a directed verdict, we must determine whether reasonable minds could reach different conclusions on the evidence presented. *Helene Curtis Indus. v. Pruitt*, 385 F.2d 841, 850 (5th Cir.1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). The evidence presented at trial does not clearly indicate whether Perry was contributorily negligent, but it does suggest such a possibility. Reasonable minds clearly could reach different conclusions on the matter. Therefore, it was not error for the trial court to deny Perry's motion for a directed verdict on the issue of Perry's contributory negligence.

## B. *Chevron's appeal*

■ Chevron has appealed the district court's refusal to grant summary judgment in its favor on the indemnity issue. Because the district court's directed verdict in favor of Chevron on the issue of Chevron's negligence has not been appealed and because we affirm the jury verdict in favor of Chevron on the issue of strict liability, Chevron's right to indemnity and insurance is moot. This appeal is, therefore, dismissed.

## C. *Dual's and Highlands' appeal*

Dual and Highlands have appealed the trial court's decision to grant Chevron's motion for summary judgment on the matter of attorney's fees. The Dual/Chevron drilling contract contains the following indemnity provision:

> Contractor [Dual] alone shall be responsible for and shall indemnify and hold Operator [Chevron] harmless from and against any damages and claims for ... injury to, impairment of health of, or death of third parties or of employees of Contractor, Operator or third parties, arising from Contractor's performance of its obligations under this agreement.

Based on this provision, the trial court found that Chevron is entitled to attorney's fees for defending this suit. We disagree.

In *Meloy v. Conoco, Inc.*, 504 So.2d 833 (La.1987), the Louisiana Supreme Court noted that the Louisiana Oilfield Indemnity Act (Act),[3] which prohibits certain defense and indemnity provisions in drilling contracts, only applies where there is "negligence or fault (strict liability) on the part of the indemnitee." *Id.* at 839. "The Act does not apply where the indemnitee is not negligent or at fault." *Id.* This much is clear; Louisiana law, and this court's application of it, on related matters is less so.

In an apparent departure from previous Louisiana law,[4] the *Meloy* court held that the indemnitor's obligation for the cost of defense is to be decided after a "judicial finding that the indemnitee is liable or that the charges against it were baseless." *Id.* Therefore, if it is determined at trial that the indemnitee was not negligent or otherwise at fault (strict liability) "the Act does not prohibit indemnification for cost of defense." *Id.*

■ Chevron interprets *Meloy* as holding that once a party is found free of negligence or fault, it is entitled to recover its cost of defense and attorney's fees. Our reading of *Meloy* is that if a party is found free of negligence or fault, it *may* recover

defense costs and attorney's fees. However, a judicial finding that the indemnitee was free from fault does not necessarily *entitle* the indemnitee to costs of defense. "Rather, it is the terms of the indemnity agreement which govern the obligations of the parties." *Id.*

While the indemnitee did recover defense costs in *Meloy*, we believe it was able to do so because the indemnity agreement provided that the contractor would defend against claims, demands and suits arising out of the contract at no cost to the Company. *See id.* at 836 n. 4. The obligation to defend, at no cost to the Company, may fairly be interpreted as meaning that the parties intended for the indemnitor to pay attorney's fees. Only by reading *Meloy* in this manner are we able to square its result with other Louisiana state court decisions.

In all Louisiana court decisions cited by the parties on appeal in this case, recovery of defense costs has been allowed only when the contract specifically so provides, or where a fair interpretation of the contract indicates that the cost of defense was contemplated as being covered by the agreement. *See id.* (contractor agreed to defend claim, demand or suit at no cost to Company); *Maloney v. Oak Builders, Inc.*, 256 La. 85, 235 So.2d 386, 389–90 (1970) (party responsible for attorney's fees specified in contract); *Wuertz v. Tobias*, 512 So.2d 1209, 1211 (La.Ct.App.1987) (lease agreement specifically provided that lessee would indemnify lessor against all claims, including expenses and attorney's fees); *Roberie v. Sinclair Refining Co.*, 252 So.2d 488, 496–97 (La.Ct.App.1971) (indemnitee unable to recover attorney's fees where contract only provided that contractor would hold harmless and indemnify Sinclair from all liabilities and claims for loss, damage or injury). Louisiana law is clear; in order to recover attorney's fees, the contract between the parties must so provide or it must be otherwise authorized by

---

**3.** La.Rev.Stat.Ann. § 9:2780 (West Supp.1989).

**4.** Prior to *Meloy*, Louisiana law held that the "pleading of the suit, not the outcome of the

case, ... determine[s] the obligation to pay defense costs." *Meloy*, 504 So.2d at 840 (Watson, J., dissenting).

statute. *Maloney*, 235 So.2d at 390; *Roberie*, 252 So.2d at 497.

This court has recognized that under "Louisiana law, attorney's fees are not allowed unless specifically provided for by contract or by statute." *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238, 1241 (5th Cir. Unit A 1980). There is nothing in the Dual/Chevron drilling contract which expressly, or by implication, would require Dual to reimburse Chevron for attorney's fees. We need not decide whether a contract imposing a duty to defend allows an indemnitee to recover defense costs. On that question there is a conflict in this circuit. *Compare Stephens v. Chevron Oil Co.*, 517 F.2d 1123 (5th Cir.1975) (attorney's fees recoverable where agreement provided contractor would "defend and hold Company ... harmless," at 1124), *with Ogea v. Loffland Bros. Co.*, 622 F.2d 186, 188 (5th Cir.1980) (attorney's fees not recoverable where agreement provided contractor would "defend and hold Company ... harmless").

Because the Dual/Chevron drilling contract does not impose on Dual a duty to defend or to reimburse Chevron for its attorney's fees or costs, Chevron is not entitled to be indemnified for its costs of defense.

The judgment of the district court is modified to eliminate Chevron's recovery from Dual and Highlands of its attorney's fees, and as modified, the judgment is affirmed.

MODIFIED and AFFIRMED.