Dear Mr. Laiche:
You requested an opinion from this office regarding a sales and use tax audit conducted by the Assumption Parish Schools Board. The undersigned was furnished with information from several sources with the facts understood to be as follows: McDermott, which is located in Assumption Parish, is contracting to fabricate, load, deliver and set in place the steel platforms that are used for mineral extraction in offshore waters. In the contract, McDermott Provides the materials (i.e. steel, paint, pumps, motors, etc.) used in the fabrication Process. Once the fabrication is completed, the structure is loaded and secured on barges for delivery and setup at the specific offshore site stated in the contract.
R.S. 47:305.10 Provides an exemption from sales tax for property purchased for first use exclusively outside the state, as follows in Pertinent Part:
 "A. There shall be no sales or use tax due upon the sale at retail or use of tangible personal property, including diesel fuel, purchased within or imported into Louisiana for first use exclusively beyond the territorial limits of Louisiana as specifically provided hereinafter in this Section."
* * *
 C. If the first use of tangible personal property purchased within or imported into Louisiana occurs offshore beyond the territorial limits of any state, the exemption provided herein shall apply only if:
 (1) The purchaser or importer has determined the location of the first use of the tangible personal property at the time of its purchase and has notified the vendor of that location; or
 (2) The purchaser or importer has not determined the intended offshore location of first use at the time of purchase or importation, but has obtained from the secretary of the Department of Revenue and Taxation an "offshore registration number" authorizing him to claim the exemption under the conditions provided in this Paragraph:
 (a) Said offshore registration number shall be issued only if the purchaser or importer has shown, to the satisfaction of the secretary, that records, reports, and business practices are sufficient to permit verification that tangible personal property purchased or imported tax-free under this Subsection is, in fact, being Purchased or imported for use offshore beyond the territorial limits of any state . . .
* * *
 (3) Except for purchases or importation of tangible Personal Property in accordance with Paragraphs (1) and (2) of this Subsection, any purchase or importation of property is taxable at the time of Purchase or import unless otherwise exempt." (Emphasis supplied)
Section (I) of R.S. 47:305.10 Provides that this exemption is applicable to sales and use taxes levied by local political subdivisions or school boards.
Section 3.01 of the sales tax ordinance states in pertinent part as follows:
 The taxes imposed by this ordinance shall not apply to transactions involving the following tangible personal property:
 (14) The sale at retail of tangible personal Property purchased within this Parish for use exclusively beyond the territorial limits of the Parish . . ."
Section 3.02 of the sales tax ordinance provides in pertinent part as follows:
 "It is not the intention of this ordinance to levy a tax upon articles of tangible personal property imported into this Parish, or produced or manufactured in this Parish, for export . . ."
A novel and unique interpretation of R.S. 47:305.10 has been submitted to this office for consideration. The theory is that in order for the exemption in R.S. 47:305.10 to apply, the first use of the tangible personal property must occur offshore beyond the territorial limits of any state.
"Use" is defined in R.S. 47:301(18) to mean and include "the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of that property in the regular course of business. . . ." "Tangible personal property" is defined in R.S. 47:301(16) to mean and include "personal property which may be seen, weighed, measured, felt or touched, or is any other manner perceptible to the senses."
Based upon these definitions, it is argued that the fabrication of the offshore platform coverts the tangible personal property to immovable real property, and therefore, the tangible personal property was first used in Assumption Parish in the creation of the immovable real Property. It is concluded that the cost of the materials converted to real property is subject to the local sales and use tax and is not subject to the exemption in R.S.47:305.10 because it applies only to tangible personal property.
In Exxon Corp. v. Traigle, 353 So.2d 314 (La.App. 1st Cir. 1977), writ refused, 354 So.2d 1385 (La.), the court equated "tangible personal property" with "corporeal movable property" as used in the Civil Code. The Court in Modern Homes 
Equipment Co., Inc. v. Collector of Revenue, 422 So.2d 1237 (La. 1982) cited Exxon in holding that a contract performed by an out-of-state taxpayer to supply labor and materials to construct roof trusses and wall sections for homes to be constructed by a general contractor was a sale of tangible personal property for purposes of the sales tax statute. In Farmer's Export Co. v. McNamara. 515 So.2d 629 (La.App. 1st Cir. 1987) the court discussed whether property which was declared to be immovable by affidavit of the owner pursuant to Civil Code art. 467 was subject to sales tax. The court stated that "since the sales tax applies to corporeal movables' not immovables, the classification of property as immovable removes it from the sales tax". The court found that the property retained its status as a movable until its placement on the immovable and the filing of the declaration and thus the property was subject to the tax.
In performing a contract to construct an immovable, a contractor is the ultimate purchaser of materials incorporated into the immovable and can be taxed. American Sign and Indicator Corp. v. City of Lake Charles, 320 So.2d 234 (La.App. 3d Cir. 1975).
The case of P.H.A.C. Services, Inc. v. Seaways International Inc., 403 So.2d 1199 (La. 1981) was cited for the proposition that oil platforms are immovable property. In P.H.A.C. the Louisiana Supreme Court held that a three-story high permanent steel structure with a helicopter landing pad constructed above it, built at a cost of over $400,000, which was designed to house persons working on an offshore drilling platform was a "building" for purposes of giving a lien to two unpaid subcontractors who supplied labor and material for its construction. It was argued that the unit should not be classified as an immovable because the unit was intended to be moved offshore. The court stated "[t]he fact that the unit is capable of being moved by a powerful crane does not defeat Classification of that thing as an immovable for, as mentioned earlier, immovability is a legal concept and not an inherent quality of a thing". The court also stated "[the legislature has determined that a building is an immovable regardless of whether its foundation is integrated with the soil".
This office has also received information from McDermott which argues that jack-ups, or movable platforms not permanently attached to the ground, are movables until such Permanent attachment occurs. It is argued that in the state and federal cases, which referred to jack-ups and various appurtenances as "immovables", the jack-ups were complete, attached to the seabed and operational. Cited were Olsen v. Shell Oil Co., 365 So.2d 1285
(La. 1979); Bruyninckx v. Bratten, 554 So.2d 247
(La.App. 3d Cir. 1989); McIlwain v. Placid Oil Company, 472 F.2d 248
(5th Cir. 1973); Moczvoemba v. Danos Curole Marine Contractors, 561 F.2d 1149 (5th Cir. 1983); Steele v. Helmerich Payne International Drilling Co., 738 F.2d 703 (5th Cir. 1984); Knapp v Chevron U.S.A., Inc, 781 F.2d 1123 (5th Cir. 1986); Perry v. Chevron U.S.A., Inc., 887 F.2d 624 (5th Cir. 1989). In Ainsworth v. Shell Oil Company, 649 F. Supp. 1223
(W.D. La. 1986), the court distinguished Olsen and found that a rig under construction was not an appurtenance for purposes of strict liability under Civil Code art. 2322.
Whether a platform while under construction is an immovable for sales tax purposes is a apparently a matter of first impression. The courts have not been consistent on whether a platform under construction is an immovable or a movable. In P.H.A.C. Services the structure was considered an immovable for purposes of allowing suppliers of labor and materials to obtain a lien. Ainsworth found that the structure was not an immovable for tort law purposes.
If the drilling platform is tangible personal property, there is no question but that the exemption contained in R.S. 47:305.10
applies and the transaction is not taxable.
In International Export Packers of La. v. State, 422 So.2d 1361
(La. 1st Cir. 1982), the court determined that packing cases which were exported to other countries were manufactured in this state for export, and for use beyond the territorial limits of Louisiana. Under the terms of R.S. 47:305(5) and 47;305.10, no sales tax was due on the materials purchased to be used in the manufacture of the packing cases.
There is no clear cut answer to the question of whether the transaction is taxable. Reasonable minds can differ on legal interpretations. It is suggested that only a court of law can decide the question of whether the transaction is taxable as both positions could be sustained by a court of law.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY
Assistant Attorney General
msh