1WALTZER, Judge.
STATEMENT OF THE CASE
Plaintiffs sued for damages allegedly sustained when a vehicle owned and operated by Hershel Palmer failed to stop for a red light and struck a van owned and operated by Alberta Jackson. Ml claims except those of Jennifer Duplessis, individually and on behalf of her minor child, Marquita Duplessis, were settled and dismissed. By supplemental petition, Duplessis sought damages against Palmer’s insurer, Mpha Insurance Corporation, for failure to make a reasonable settlement offer under La.R.S. 22:1220.
Following a bench trial on the merits, the trial court rendered judgment in favor of plaintiffs in the following amounts:
Past and future pain and suffering $45,000.00
Past medical expenses 3,549.04
Future medical expenses 13,500.00
We affirm.
¡¿STATEMENT OF FACTS
Palmer admitted responsibility for the accident, which occurred on 27 November 1994. The only issue remaining is the extent of *638 damages sustained by Jackson’s. passenger, Marquita Duplessis.
Dr. Barry Bordonaro saw Marquita on 29 November 1994. Her face was very swollen and her eyes were black and blue and crossed. According to the history taken from her mother, Marquita was seated on the left rear seat of a van that was hit and spun around several times. On impact, Marquita was thrown forward and hit her face on the glass. When Dr. Bordonaro saw her, Marquita was complaining of pain in her head, face and neck. He ordered x-rays and diagnosed contusion to the left peri-orbital area and a cervical strain. He saw her again five months later and noticed dark areas and shininess under the eyes. Marquita complained of headaches. Because the shininess is usually an indication of sinusitis, he referred Marquita to an ear, nose and throat specialist. He testified on cross-examination that he found no indication of a blow out fracture or of a trimalar fracture.
Dr. Maynard Garrett, a board certified otolaryngologist, testified that he treated Marquita in May 1995. Marquita complained of stuffiness, frequent cough and colds, and bruises under both eyelids. He examined Marquita and ordered x-rays. He found severe sinusitis and deviated septum, which either caused or complicated the infection. He testified that it was not unusual in the event of blunt trauma to the face for the septum to move. He concluded that Marquita’s septal bone had disarticulated out of its groove and had broken free from the bony plate. This caused a buckling of most of the septum on the right side. This deformity prevented the normal outflow of the maxillary sinuses, mucous could no longer fcdrain and bacteria could grow in the affected area. His final conclusion was severe septum obstruction due to dislocation sinusitis on x-rays with an old orbital blowout.
Dr. Garrett recommended treatment with broad-spectrum antibiotics, steroid hormones and an anti-inflammatory drug. In July 1995 Marquita returned with essentially the same complaints. He added an anti-inflammatory spray to her medications. In August, significant sinusitis was still present. Her problems continued through visits in September and December. Dr. Garrett saw Marquita in April 1996 and again in November 1997. She complained of headaches and appeared to have acute infection and obstruction. The recurrent infection caused scarring that increased the blockage problem. He performed a fiberoptic scope of the sinus, and was unable to visualize the individual sinuses because of obstructions. He then ordered a CT scan, which focused predominantly on the cervical spine and was inconclusive as to the sinus problems. Marquita improved somewhat when he saw her in January 1998, but worsened in February. He increased her medications. He saw Marquita shortly before trial and noted her problems had continued. He recommended surgery to straighten the septum and remove the area of obstruction and possibly the turbinate valve.
Dr. Garret concluded that the pictures taken after the accident, showing a swollen left eyelid and left lip, are not consistent with a simple blow to the forehead. Furthermore, the bruising of the medial portion of her lower cheek and the worsening of her sinus condition is consistent with a causal connection between the accident and the sinus problems. He concluded that the sinus problems are secondary to the blowout fracture.
[iDr. Charles Aprill testified that Dr. Garrett referred Marquita to him for a CT scan of her sinuses. The examination revealed mucosal thickening in the right sphenoid sinus and the left inferior turbinate. Although there was no acute evidence of the frontal bones, thickening of the left orbit and the downward curve of the thickened bone are compatible with a classic blow out fracture and subsequent healing. He noted an orbital floor fracture and deviated septum on the film. He testified that x-rays taken within a few days of the accident were consistent with the fracture he described.
Dr. Ronald French, an expert otolaryngol-ogist, testified that he performed an independent medical examination in January 1998 and did not relate Marquita’s deviated septum to the accident. He testified that it is impossible to determine the cause of her deviated septum at a time so far removed from the accident. Marquita’s mother testified that prior to the accident, Marquita had *639 no symptoms of and had never been treated for sinus or allergy problems.
In its reasons for judgment, the trial court found that the parties produced conflicting medical testimony as to whether Marquita sustained a “blow out” fracture of the left eye orbit in the accident. The court held:
The Court accepts the testimony of Dr. M.E. Garrett, one of Marquita Duplessis’ treating physicians, and finds that the left orbit fracture and consequences thereof were caused by the auto accident that forms the basis of this litigation.
STANDARD OF REVIEW
We are instructed that before a> fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, andlthat the record establishes the verdict is manifestly wrong. Lewis v. State, Through Dept. of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314; Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts[1], not merely to decide if we would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745.
Whether an accident caused a person’s injuries is a question of fact that should not be revérsed on appeal absent manifest error. Mart v. Hill, 505 So.2d 1120 (La.1987).
“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Our initial review function is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings. Where a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never manifestly erroneous or clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
(¡FIRST, SECOND AND THIRD ASSIGNMENTS OF ERROR: The trial court erred in finding plaintiff’s septal deviation was a consequence of a blowout fracture and was caused by the accident.
A personal injury plaintiff must prove by a preponderance of evidence a causal relationship between her injury and the accident that caused the injury. The plaintiff must prove through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603 p. 3 (La.2/20/95), 650 So.2d 757, 759.
The trial court chose to accept Dr. Garrett’s testimony that the accident caused a blowout fracture that ultimately resulted in Marquita’s deviated septum. That choice was a reasonable exercise of the prerogative' of the finder of fact in this State.
Marquita’s disability is presumed to have resulted from the accident if, before the accident, she was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest. themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
We have reviewed the entire record and find that the testimony of Dr. Garrett supports the trial court’s findings that Marquita sustained a blowout fracture and a dislocation of the nasal septum as a result of the accident. Mrs. Duplessis’s testimony establishes that prior to the accident Marquita did not ^display the sinus symptoms that became an unwelcome part of her life after the accident. We conclude, under Mart v. Hill, supra and Housley v. Cerise, supra, that the trial court’s judgment was not manifestly *640 erroneous or clearly wrong. This assignment of error is without merit.
FOURTH ASSIGNMENT OF ERROR: The trial court awarded excessive general damages to plaintiff.
Our initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (La.1963). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den. 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury feto the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., supra.
The award of general damages in this case is not obviously the result of passion or prejudice, and bears a reasonable relation to the elements of proven damages. We cannot conclude from the entirety of the evidence viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the award of general damages at the level set by the trial judge. Nor is this is one of those “ exceptional eases where such awards are so gross as to be contrary to right reason.” Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987); Youn v. Maritime Overseas Corp., supra.
The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it “shocks the conscience.” Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
The record taken as a whole does not support reduction of the trial court’s general damage award. Marquita Duplessis was 11 years old at the time of the accident. She suffered traumatic injury to her face that resulted in persistent, chronic sinus infections and severe sinus headaches that continued through the time of trial, three years later. She will have to undergo sinus surgery with its attendant pain and anxiety. Her medical expense, past and future, totals $17,049.04. The award of $45,000 for past and future pain and suffering bears a reasonable relation to the special damages. We find no abuse of the trial court’s vast discretion in this award of general damages. This assignment of error is without merit.
^CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment below.
AFFIRMED.

. See LSA-Const. Art. 5, section 10(B).